## BOYLE v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Third Circuit. December 8, 1915.)

### No. 1977.

COMMERCE ⟨K⟩27—EMPLOYERS' LIABILITY ACT—SERVANT "EMPLOYED IN INTERSTATE COMMERCE."

A passenger train moving between interior points within the same state and not at the time carrying passengers or baggage in interstate commerce was not engaged in such commerce, and an employé injured while inspecting the cars in such train was not at the time of injury "employed in interstate commerce," within the meaning of Employers' Liability Act, April 22, 1908, c. 149, § 1, 35 Stat. 65 (Comp. St. 1913, § 8657), although the train connected with interstate trains, advertised such fact, and frequently carried passengers destined for points in other states.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ⟨K⟩27.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

---

⟨K⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by Catherine Boyle, administratrix of the estate of Thomas Boyle, deceased, against the Pennsylvania Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

For opinion below, see 221 Fed. 453.

Charles Petchon and Bertram D. Rearick, both of Philadelphia, Pa., for plaintiff in error.

John Hampton Barnes, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The question is whether the deceased was employed in interstate commerce at the time he was injured.

The defendant railroad company operated companion trains moving in opposite directions between Philadelphia and Pottsville in the State of Pennsylvania. They were scheduled to pass at Phœnixville, the northbound train being due to arrive two minutes before the southbound train. Thomas Boyle, the plaintiff's intestate, was a car inspector in the employ of the defendant at Phœnixville. It was his duty to inspect both trains. On the day in question, he had completed the inspection of the northbound train, which was the first to arrive. While waiting to inspect the southbound train, which he saw approaching, Boyle stood in the space between the tracks on which the two trains moved, leaning against the engine of the train he had just inspected. While in this position, he was struck by the engine of the southbound train, and received injuries from which he died.

The two trains moved between points within the State of Pennsylvania. Both were advertised on the defendant's time table to connect at West Philadelphia with trains to and from New York. Neither, at the time of the injury to Boyle, was shown to have been transporting passengers, baggage or express matter in interstate commerce. The court submitted the issue of negligence to the jury upon instructions with respect to the defendant's liability under the Federal Employers' Liability Act of April 22, 1908 (35 Stat. 65). These instructions were, in part, as follows:

"I charge you, as a matter of law, that it is not sufficient that this defendant is at times engaged in interstate commerce. That will not do. It is not sufficient that it is prepared to do interstate commerce and holds itself out as ready to do it. The thing that you must find, under the evidence in this case, is that at the time this man was killed, this company was at that time and the train about which he was employed was engaged in interstate commerce. That means, getting it down to a nut-shell, *whether there was anyone on that train, any baggage upon that train, that at that time were being carried from one state to another.* If there was any of that kind of business being done at that time, that is interstate commerce. If it was not being done at that time, then the defendant was not engaged in interstate commerce and that is the end of the case. * * * *Let me say again, the fact that it at times does it or ordinarily does it, the fact that it stands ready to do it, and advertises by its schedules or otherwise, that it is ready to do it, is not enough. You must take it upon your consciences to say that it has been proven by the evidence in this case to your satisfaction that it was so engaged at the time.*"

The jury rendered a verdict for the defendant.

The only error assigned is in the portion of the charge above quoted, in which the trial judge suggested a test or established a standard by which the jury was required to determine whether the deceased was employed in interstate commerce at the time he sustained his injuries. The error consists, as it is contended, in restricting the test to the character of commerce in which the train was engaged at the precise time the injuries were inflicted, indicated by the presence or absence of passengers and baggage being carried to another State, and in not extending the test to other considerations which are conceived to be equally pertinent. One is that the prompt and safe movement of an intrastate train is so necessary to the safety and unimpeded movement of interstate trains moving over the same track, that inspection of the intrastate train becomes a part of interstate commerce. The other is that the advertised fact that an intrastate train connects at West Philadelphia with trains to and from New York, makes that train a link in an interstate system and therefore a part of interstate commerce, and that inspection of such a train is employment in such commerce.

In support of the first exception to the charge, the plaintiff in error cites and relies upon the line of cases, holding generally that the work of repairing or maintaining instrumentalities used indiscriminately in intrastate and interstate commerce is employment in interstate commerce.

The contention of the plaintiff in error is based upon the admittedly correct proposition that a car which has been and may again be used indiscriminately in intrastate and interstate commerce, is an instrument of interstate commerce. Northern Pacific Ry. Co. v. Maerkl, 198 Fed. 1, 4, 117 C. C. A. 237; Interstate Commerce Commission v. Illinois Central R. R. Co., 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280. Employment upon such an instrument of commerce may be of two kinds; first, repairing or preparing it for use in commerce of both kinds; second, using it in commerce of one kind or the other. With respect to employment upon such an instrument of interstate commerce, the plaintiff cites and relies upon several cases, of which the first is Northern Pacific Ry. Co. v. Maerkl, supra, cited by the Supreme Court in Pedersen v. D. L. & W. R. R. Co., infra. In this case, the court held that a workman employed in the repair shops of a railroad company in repairing a car having been used and intended again to be used in commerce of both kinds, is employed in interstate commerce, and if injured when so employed, he is within the protection of the Federal Employers' Liability Act. It is to be noted that the work that Maerkl was doing was not using an instrument of commerce in interstate commerce, but was preparing that instrument for use in commerce either of one kind or the other, and therefore for use in interstate commerce.

In North Carolina Ry. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, the employment of the injured employé was very similar to that of Maerkl. In this case, the deceased was a fireman on a train about to move between interior

points in the State of North Carolina. The train included two cars which had come from the State of Virginia. After preparing his engine to move the train and continue the transportation of the two cars in interstate commerce, though between intrastate points, the fireman was killed. The court held that "his acts in inspecting, oiling, firing and preparing his engine for the trip" were acts performed as a part of interstate commerce. The deceased was employed in preparing an instrument for use in interstate commerce, and the fact that two of the cars of the train were carrying interstate freight, though vigorously controverted, was the fact upon which the interstate character of the employment of the deceased was established. There is a distinction between employment in preparing an instrument of commerce for use, and employment in using such an instrument in commerce. Preparation of an instrument for use in commerce of both kinds necessarily means preparation for use in commerce of either kind, and as one kind is interstate commerce, it follows logically that such preparation is for use in interstate commerce, but employment connected with the actual use of such an instrument is a part of intrastate or interstate commerce according as the instrument is in use in commerce of one kind or the other. The preparation for use, and the use of instruments in commerce of both kinds, are sometimes not easily distinguishable, when, for instance, the instrumentality is such as a railroad bridge or a railroad track. Upon cases dealing with such instrumentalities, the plaintiff in error principally relies to sustain his contention that preparation of an instrument of commerce having a double use, is interstate commerce, without regard to the kind of commerce in which the instrument is actually employed at the time of an injury. Of course, the leading case upon this subject is Pedersen v. D. L. & W. R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. At the time Pedersen was injured, he was engaged in repairing a bridge which formed a part of the main line of the defendant's railroad. The court held that the bridge, though used indiscriminately in the two kinds of commerce, was an instrument of interstate commerce, and that in repairing the bridge, Pedersen was employed in such commerce. The decision was based upon the finding that the bridge was an instrument of interstate commerce, without regard to the double use to which it was put, and therefore employment in its repair was so closely connected with interstate commerce as to be a part of it. Following the principle announced in Pedersen v. D. L. & W. R. R. Co., supra, this court has recently held in P., B. & W. R. R. Co. v. McConnell, 228 Fed. 263, —— C. C. A. ——, that a track used indiscriminately by trains moving in intrastate and interstate commerce, is an instrument of interstate commerce, and employment in repairing the same is employment in interstate commerce. It thus appears that in the Maerkl, Zachary, Pedersen and McConnell cases, the employment related to the preparation of instrumentalities of commerce for use and not to the use of such instrumentalities.

Throughout this line of cases, of which the few discussed are fair examples, there is the underlying idea that work upon instruments of

interstate commerce and preparation for their use in interstate commerce, are so intimately and directly related to interstate commerce as to make such work or employment a part of it. There are other cases, however, which have to do, not with employment in preparing instrumentalities of commerce for use, but with employment connected with the actual use of such instrumentalities in commerce of one kind or the other. In such cases, the law does not hold employment upon an instrumentality to one kind of commerce, notwithstanding its double use, but distinguishes between its use in intrastate and interstate commerce, as of necessity it must, and the courts recognize and at-tempt to enforce the distinction. In certain cases, the distinction is determined by the character of commerce in which the instrument is in use. For instance, in the Maerkl case, a carpenter was held to be employed in interstate commerce because he was repairing a car in current use in both kinds of commerce; the fact that such a car was being used in interstate commerce determined the interstate character of the fireman's employment in the Zachary case; while the fact that such a car was being moved in intrastate commerce determined the intrastate character of the fireman's employment in the Behrens case, infra.

In the case of Illinois Central R. R. Co. v. Behrens, 232 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, the plaintiff's intestate was a fireman of a switch engine operated exclusively within the City of New Orleans and used at different times in moving indiscriminately both classes of commerce. At the time of the collision which caused the injury, "the crew was moving several cars loaded with freight which was wholly intrastate, and upon completing that movement was to have gathered up and taken to other points several other cars as a step or link in their transportation to various destinations within and without the state." The question of law was whether upon these facts the intestate was employed in interstate commerce within the meaning of the act. The court considered the status of the railroad as a highway for both intrastate and interstate commerce, the interdependence of the two classes of traffic in point of movement and safety, and the practical difficulty in separating or dividing the general work of the switching crew. Applying to these considerations the words of the statute, "suffering injury while he is employed by such carrier in such commerce," and giving to the words their natural meaning, the court held:

"That Congress intended to confine its action to injuries occurring *when the particular service* in which the the employé is engaged is a part of interstate commerce."

Quoting from the opinion and applying the test announced in Pedersen v. D. L. & W. R. R. Co., supra, the court continued:

" 'There can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employé is employed by the carrier in such commerce. * * * The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?' * * *

"Here, at the time of the fatal injury, the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city

to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. That he was expected, upon the completion of that task, to engage in another which would have been a part of interstate commerce is immaterial under the statute, for by its terms the true test is the nature of the work being done at the time of the injury."

What was the character of the train at the time Boyle was to inspect it? Upon the uncontroverted evidence, it was a train moving between interior points in the state, carrying neither interstate passengers nor baggage. It was then rendering no service in interstate commerce. Whether it was then ready to render such a service or thereafter actually rendered it by receiving passengers to be transported to another state, is beyond the question of the character of the commerce in which it was engaged at the time of Boyle's employment and injury.

What was the nature of Boyle's employment at the time of his injury? Unlike Maerkl, Boyle was not repairing or at work upon a car thereafter to be used in both kinds of commerce. He was employed upon cars then in actual use and in use either in one kind of commerce or the other, not in both kinds. The use of the cars at the instant of Boyle's injuries related only to the train of which they were a part, and of the journey of the train. That use was at that time either intrastate or interstate. It could not have been both, for without interstate passengers and baggage it would have been an intrastate use, and with both intrastate and interstate passengers and baggage it would have been interstate. Therefore, the kind of commerce in which the cars were being used at the time Boyle was at work upon them, determines whether Boyle's employment was intrastate or interstate in character.

Boyle's employment was similar to that of Behrens at the time of his injury, with similar disregard to the possible interstate character of the commerce in which the train, as an instrumentality, might subsequently be used. Therefore, the test of the kind of commerce in which the train was being used and in which Boyle was employed, as contained in the charge of the learned trial judge, was not restricted in its scope, when considered with respect to the facts of this case and the restricted question arising from them. There was no occasion for him to include in his instructions and illustrations all instances in which the Act might apply, but it was sufficient for him to conform his instructions to the limited facts of this particular case. This he did correctly and sufficiently, unless indeed it be law, as urged by the plaintiff in error, that inspection of the intrastate train is so related to interstate commerce as to make it a part of it, and that the train moving between interior points lost its intrastate character by reason of the advertised fact that it made interstate connections.

In many cases it is difficult to find the line distinguishing intrastate and interstate commerce; nevertheless the line exists. It is the function of the courts to maintain the line of distinction and to promulgate rules by which it may be found. We are urged in this case, however, to advance a principle which would not aid in discovering the line of

distinction between the two kinds of commerce, but, we conceive, would obliterate it. We are urged to this position upon authority of the decisions under the Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [Comp. St. 1913, §§ 8605–8612]) with which it has been said the Employers' Liability Act is in pari materia.

Under the Safety Appliance Act, all cars of an interstate railroad, in whatever kind of commerce used, are required to be equipped with safety appliances, upon the theory that such universal equipment is necessary to the safety of interstate traffic. It has therefore been held in Southern Ry. Co. v. United States, 222 U. S. 20, 26, 27, 32 Sup. Ct. 2, 56 L. Ed. 72, that a car used for intrastate traffic only, when hauled over tracks used for interstate traffic, is within the Safety Appliance Act. In the Second Employers' Liability Act Cases, 223 U. S. 1, 51, 52, 32 Sup. Ct. 169, 176 (56 L. Ed. 327, 38 L. R. A. [N. S.] 44), it was held that:

"It is not a valid objection that the act embraces instances where the causal negligence is that of an employé engaged in intrastate commerce; for such negligence, when operating injuriously upon an employé engaged in interstate commerce, has the same effect upon that commerce as if the negligent employé were also engaged therein."

Relying upon this expression and the Safety Appliance Act decision, last cited, the plaintiff in error urges the contention that the effect of inspection of an intrastate train is so immediately and necessarily related to the safe movement of interstate commerce as to be a part of it. We are of opinion that the decision cited under the Safety Appliance Act may be considered as a logical interpretation of the means intended by Congress to effect and obtain the safety to interstate commerce contemplated by the Safety Appliance Act. The decision in the Second Employers' Liability Cases, supra, to the extent in which it was cited, dealt only with the liability of employers for injuries to their employés, and related only to the matter of injuries sustained by an employé in interstate commerce, occasioned by an employé in intrastate commerce. Neither case is authority for the contention so broadly made, that acts which are primarily intrastate, become interstate in their nature when they affect the safety or movement of interstate commerce. While the movement of an intrastate train, like the use of any intrastate instrument, may in some measure affect the safe movement of interstate commerce, we believe that in the present case, the inspection of such an intrastate train is so remotely related to interstate commerce that under the tests prescribed by the Supreme Court it cannot be considered a part of it.

It is further contended by the plaintiff in error that the two trains involved in this case were engaged in interstate commerce by reason merely of the fact that they were advertised to make connections at West Philadelphia with trains to and from New York, and "were, therefore, trains employed by the defendant, when occasion required, for the transportation of interstate passengers."

At the West Philadelphia station of the defendant railroad company, connections may hourly be made with a vast number of trains moving between points wholly within the State of Pennsylvania and be-

tween points in Pennsylvania and other States. The opportunity to make connections, whether generally known or advertised, does not effect a change in the character of a train or of the commerce in which it is engaged. It is advertised that connections may be made at this station; if no connections be made, no change is effected; while on the other hand, if connections be made, the character of the commerce may be changed according only as passengers availing themselves of the convenience may be traveling upon through tickets embracing one contract of transportation from a point in Pennsylvania to a point in another state, or upon separate tickets involving two contracts of transportation, one ending at West Philadelphia for a part of the journey, and the other beginning at West Philadelphia for the balance of the journey. Gulf, Colorado & Santa Fé Ry. Co. v. Texas, 204 U. S. 403, 27 Sup. Ct. 360, 51 L. Ed. 540. Therefore, whether the trains involved in this suit were engaged in transporting passengers in interstate commerce, depends not upon the advertisement or upon the fact that connections may be made at West Philadelphia, "when occasion required," that is, when passengers desire, but upon the actual character of the transportation in which such trains are engaged at a given time. We are therefore back to the first question, which relates to the character of the commerce in which the train was engaged and the intestate was employed at the time of his injury, controlled by the evidence that the train moved between interior points in one state, and that it was transporting no passengers or baggage into another state. From this test or standard, presented by the trial judge, it must be decided that it was not engaged in interstate commerce, and those participating in its movements were not employed in that commerce. We find no error in the charge of the court, considered with reference to the facts to which it was directed.

The judgment below is affirmed.