LONG, ADMINISTRATOR *v.* BIDDLE, *et al.* RECEIVERS ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY.

Opinion delivered May 22, 1916.

1. MASTER AND SERVANT—FEDERAL EMPLOYER'S LIABILITY ACT—RECOVERY BY ADMINISTRATOR—NO NEXT OF KIN.—There can be no recovery against a master under the Federal Employer's Liability Act, by the administrator of a deceased employee where decedent did not leave surviving him a widow or children, parents or other next of kin dependent upon him.

2. MASTER AND SERVANT—FEDERAL EMPLOYER'S LIABILITY ACT—RIGHT OF RECOVERY.—The right of recovery under the Federal Employer's Liability Act, arises only where the injury is suffered while the carrier is engaged in interstate commerce, and while the employee is employed by the carrier in such commerce.

3. MASTER AND SERVANT—INJURY TO SERVANT—INTERSTATE COMMERCE.—Deceased, an employee of defendant railway company, was killed while engaged in repair work upon a bridge, the same being used by the carrier in interstate and intrastate commerce. *Held,* the work the deceased was engaged in was in the interstate commerce of the carrier.

Appeal from Lawrence Circuit Court, Western District; *Dene H. Coleman,* Judge; affirmed.

*W. P. Smith* and *G. M. Gibson,* for appellant.

1. The deceased was *not* engaged in interstate commerce at the time of his injury. 229 U. S. 146; 233 *Id.* 473; 180 S. W. 443; 238 U. S. 439; 181 S. W. 375; 177 *Id.* 465; 150 *Id.* 201.

*W. F. Evans* and *W. J. Orr,* for appellees. *Ponder & Ponder,* of counsel.

The Federal Act applies. Deceased was engaged in interstate commerce and there can be no recovery. 229 U. S. 146; 238 *Id.* 260; 233. *Id.* 473; 154 Pac. 1102; 36 U. S. Rep. 188; 210 Fed. 870, 92; 219 *Id.* 150, 180; 172·

S. W. 519; 150 N. W. 489; 155 N. W. 504; 196 Féd. 337; 179 *Id.* 893; 192 *Id.* 901; 197 *Id.* 695; 198 *Id.* 1.

HART, J.    J. C. Long, as administrator of the estate of Lex Long, deceased, instituted this action against the receivers for the St. Louis & S. F. Rd. Co. to recover damages for the alleged wrongful death of his intestate, while in the employment of the railroad company. The material facts are as follows:

In March, 1915, the St. Louis & San Francisco Railroad Company was in the hands of receivers, who operated its line of road. The road extended through Crittenden County and other counties in the State of Arkansas, into the State of Missouri and other states, and was engaged in interstate commerce.

Lex Long was employed as a bridge repairer at the time he received his injuries and was engaged in knocking drift bolts from bridge timbers when he got hurt. His injury resulted in his death. At the time Long received his injuries he was a member of a crew which was engaged in constructing new bridges and removing the old ones. The work is done so as not to interfere with the operation of the road. The crew drives new piling inside of the old ones and caps are put on the new piling. Timbers are then laid on top of the caps or bents, which run the same way the rails run, and are called stringers. The railroad company's ties are laid on top of the stringers and then the rails are laid on top of the ties. The old caps or bents are removed, and, if there is no water under the bridge, they are dropped down on the ground. There was water under the bridge in question, and in such case it was the custom to lay the bents along the side of the dump, clear of the rails, so that the bolts might be removed from the bents. The bents which are sound enough to use elsewhere, are then piled up along the right-of-way to be moved. When they are not sound enough for further use, they are piled up along the right-of-way and burned.

Lex Long and a companion were engaged in removing the drift bolts from the bridge timbers when, by some means, the bridge timbers began to roll down the embankment and one of them struck Long, inflicting the injuries which resulted in his death. The bolts were being taken out of the bents in order that they might be piled up and then loaded on the cars and carried into the State of Missouri for use in repairing other bridges. Without stating the particular circumstances which caused the injury to Long, it may be said that they were such as would warrant a jury in finding that they were caused by the negligence of his fellow-servant. That the railroad company was engaged in interstate commerce is conceded. The circuit judge was also of the opinion that Long was employed by the carrier in such commerce at the time he was injured. He did not leave surviving him a widow or children, parents or any other next of kin dependent upon him. Therefore, the circuit judge directed a verdict in favor of the railroad company, and from the judgment rendered, the plaintiff has appealed.

(1-2) It is conceded that if the Federal statute was applicable, the State statute must yield to it and the plaintiff is not entitled to recover because decedent did not leave surviving him a widow or children, parents or other next of kin dependent upon him. Federal Employer's Liability Act of April 22, 1908, 35 Stat. L. 65, c. 149; (Fed. St. Ann. 1909, Supp., p. 584). The Federal Act is printed in full in 223 U. S. 6. The Federal Employer's Liability Act has for one object, the lessening of danger to employees during interstate transportation and to broaden the relief for damages sustained by employees while so engaged. This statute has been broadly considered and liberally construed by the Supreme Court of the United States. That court has repeatedly held that the right of recovery under the act arises only where the injury is suffered while the carrier is engaged in interstate commerce, and while the employee is employed by the carrier in such commerce.

(3) It is conceded that the railroad company was engaged in interstate commerce at the time its employee was injured and that the real question is whether or not the injuries which caused the death of the deceased were sustained while he was employed by it in interstate commerce. In *Pedersen* v. *Delaware, Lackawana & Western Rd. Co.*, 229 U. S. 146, Am. & Eng. Ann. Cas., volume 33, 1914C, p. 153, an employee of an interstate railway carrier was killed while carrying a sack of bolts or rivets to be used in repairing a bridge which was regularly in use in both interstate and intrastate commerce. It was held that he was employed in interstate commerce within the meaning of the Federal Employer's Liability Act of April 22, 1908, giving a right of recovery against the carrier for the death of an employee while so employed. In that case the court said: "Tracks and bridges are as indispensable to interstate commerce by railroads as are engines and cars, and sound, economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency * * * in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment,' used in interstate commerce. But, independently of the statute, we are of the opinion that the work of keeping such instrumentalities in a proper state of repair while thus used, is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroads can be separated into its several elements and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate

commerce in which the carrier is engaged?'' The point was made in that case that the employee was not at the time of his injury engaged in removing the old girder and inserting the new one, but was merely carrying to the place where that work was to be ·done some of the material to be used therein and was, therefore, not employed in interstate commerce. The court thought there was no merit in this contention and said: ''It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, as is the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce.'' So, too, in the present case, the contention is made that the employee was not employed in interstate commerce at the time he received the injuries which resulted in his death.

Counsel point to the fact that the caps or bents had been removed from the bridge and were lying by the side of the dump, far enough to be clear of passing trains. For this reason they insist that the employee was through with constructing the bridge and that the work he was engaged in at the time of his injury was not a part of the interstate commerce. It must be admitted that this is a border-line case, but when tested by the rule already laid down by the Supreme Court of the United States, we think the employee was employed in interstate commerce at the time he received his injuries. It will be remembered that when the timbers taken from the bridge are old and worthless, they are piled up and burned. When they are sound enough to be used again, the bolts are removed from them and they are piled up on the right-of-way and thereafter carried to the place where they are to be again used. It is not sufficient that they should be moved far enough away from the track so that they would not be struck by passing trains. The work of constructing and repairing the bridge would not be accom-

plished by removing the bridge timbers only this far. Their presence so near the track would not only be a constant source of danger to the employees engaged in operating trains, and the traveling public, but would also materially hinder the employees in operating the train. The engineer is required to keep a constant lookout, and would be frequently at a loss to know whether the logs lying so near the track were obstructions on the track or not. Again, it will be readily seen that when the timbers became dry and rotten they would easily catch fire from the passing trains and the fire thus put out would endanger the bridges and tracks near which they were piled. Many other reasons readily suggest themselves why it would be dangerous to leave these timbers so near the track. We think it was a part of the work of constructing the bridge to remove the timbers a safe distance away from the track after they were taken from the bridge, and that a part of this work consisted in drawing bolts out of the timber so that they might be more easily stacked and made ready for shipment.

Therefore, we are of the opinion that the deceased was employed in interstate commerce at the time he was injured and the plaintiff is not entitled to recover.

The judgment will be affirmed.