BRUNOT, J.
This is a suit by the surviving wife against the Louisiana Railway & Navigation Company for compensation for *956 herself and her two minor children for the accidental killing of her husband, an employee of defendant, while he was engaged in work arising out of and in the course of his employment. The suit was brought under the provisions of Act No. 20 of 1914, as amended by Act No. 38 of 1918 and Act 43 of 1922. The district court sustained plaintiff’s suit and demands; awarded her compensation at the rate of $18 per week for 300 weeks, and $50 additional compensation. On appeal the Court of Appeal annulled and avoided the judgment of the district court and dismissed the suit without prejudice to the rights of the parties to institute a pr.oper suit under the federal Employers’ Liability Act. Thereupon application was made to this court for a writ of certiorari. The writ was issued, and the case is now before us for review.
All of the facts alleged in the petition are admitted, except defendant’s liability and plaintiff’s right to institute and prosecute the suit. The defense is that the deceased was killed while he was engaged in interstate commerce, and that the rights, duties, and liability of defendant are to he determined and governed by the provisions of the federal -Employers’ Liability Act.
Relator tenders an assignment of errors, but, as the sole question to be determined is whether the state or the federal Employers’ Liability Act has application to the facts of this case, the assignment of errors need not be considered separately. The facts are:
The deceased was a bridge foreman. He was assisting in unloading piling from a car. He was struck by one of the piles, and died a short time thereafter from the injuries received. The accident occurred at the Thompson creek bridge in West Feliciana' parish. The shipment of piling originated at Paloma, a station a few miles from Thompson’s creek. The piles were loaded on intrastate cars. -The cars were hauled to their destination in a local train handling only intrastate commerce. The piling was intended for use along the banks of Thompson’s creek, about 600 feet from tbe railroad bridge, for the purpose of diverting a current of water and securing the bridge abutments. The defendant’s entire line of railroad lies within the state of Louisiana. At times it engages in interstate commerce, but the record does not disclose to what extent.
The ground upon which the Court of Appeal annulled the judgment of the district court was:
“That the deceased was injured while performing duties connected with interstate commerce, and that the rights of the survivors and the duties of his employer are regulated by the federal lawi”
The Court of Appeal appears to have reached the conclusion that because the piling whs to be ultimately used to deflect the waters of Thompson’s creek, and thus to secure the abutments of a railroad bridge over which defendant’s trains operated and hauled interstate and intrastate shipments, the act of unloading the piles from a car at or near the bridge was so closely related to the ultimate use of the piles and to the preservation of.(a facility already in the service of commerce that a person so employed was engaged .in interstate commerce. In the opinion it is said:
“In the present case there is the closest relationship of the track and bridge to commerce, and there is an assumed continual application of these instrumentalities to the use of interstate commerce.
“It will be seen that the immediacy of the relationship depends upon the purpose of the act far more than upon the place of its performance. * * * And it is a mere accident of place, and not one affecting the purpose, nor the incidental connection with commerce, if the material be placed near the bridge, instead of upon it. The same may be said of the actual use of the material; for certainly it cannot be said that works 600 feet from a bridge, shown to be necessary for its maintenance, are less necessary and less incidental to its continued use than the works physically joined to the *958 bridge itself. The relationship is not fixed by location, but by the purpose and the effect of the act.”
We cannot reconcile the quoted, views of the Court of Appeal with the rule that facilities must have become a part of the structure or maintenance before they can become instruments of interstate commerce. To come within this principle the thing must be completed, if it be a new work; and, if it be the repair or maintenance of an existing facility, the work thereon must have been actually begun. Preliminary preparation for a merely contemplated work is not within the rule. It is to be noted in this connection that, while the purpose for which the piling was intended to be used is shown, there is no proof in the record of any necessity for its immediate use for that purpose and no proof as to when or whether it ever would be so used.
When it is considered that the deceased was merely engaged in unloading piling from a car, and that his immediate employment would have ended with the unloading of the piling, the facts of the case bring it within the rule announced in C., B. & Q. R. Co. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941.
The specific work in which a railroad employee is engaged at the time he is injured is the test to be used in determining whether the federal Employers’ Liability Act is applicable. Neither his previous nor subsequent employment in interstate commerce will bring the case within the provisions of that act, regardless of the prima facie presumption that the employer was engaged in interstate commerce, because the federal Employers’ Liability Act clearly defines that both the employer and the employee must be engaged in interstate commerce at the time of the accident to bring the case within its provieions. In the case of Thaxton v. Louisiana Railway & Navigation Co., 153 La. 292, 95 South. 773, this court said:
“Our opinion, on the contrary, is that it was sufficient, to bring a case within the statute [the state statute], to show that, in the particular employment in which the employee was injured, the employer was not engaged in interstate or foreign commerce. Of course, if the employer, as far as that employment was concerned, was not engaged in interstate or foreign commerce, the employee was not then engaged in such commerce. The showing that the train itself, on which the employee was working at the time of the accident, was not engaged in interstate or foreign commerce was a sufficient showing that the employer, as far as that employment was concerned, was not engaged in interstate or foreign commerce. And, as the railroad itself was entirely within the state, the presumption, prima facie, that the employer was engaged in interstate or foreign commerce at the time of the accident, did not continue.”
In this case it is admitted that the piling was an intrastate shipment. The cars on which it was loaded were "hauled by a local train handling only intrastate commerce. These admissions destroy the prima facie presumption that the employer was engaged in interstate commerce at the time of the accident.
We do not think it necessary and we are not disposed to review the many authorities cited by counsel in the briefs. We prefer to condense our opinion, unless some useful purpose can be served by amplification.
Eor these reasons we are of the opinion that the judgment of the district court is correct, and that it was error to annul and avoid that judgment. It is therefore ordered that the judgment of the Court of Appeal be annulled and avoided, and the original judgment of the district court be reinstated and made the judgment of this court.
All costs to be paid by defendant.
Rehearing refused by Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.