PETERSON v. L. R. & N. CO.

(January 21, 1929. Opinion and Decree.)

Paul W. Sompayrac and A. T. Higgins, of New Orleans, attorneys for plaintiff, appellant.

Milling, Godchaux, Saal & Milling, of New Orleans, attorneys for defendant, appellee.

JONES, J. This suit was brought by Henry Peterson, tutor of his minor brother, Vat Peterson, to recover either amount due under the Compensation Law of Louisiana, or, in the alternative, $6,000.00 under the Federal Employer's Liability Act (45 U. S. C. A. 51-59).

Petitioner, the duly appointed tutor of his brother, alleges as follows:

About 10:00 o'clock a. m., on October 30, 1926, Vat, who was working for the de-

fendant in the railroad yard near Shrewsbury, in Jefferson Parish, went under a box car in a string of eighteen cars on the fourth track from the main line to answer a call of nature, as no adequate place had been furnished; without warning, without signals, and without observing any precautions, defendant backed an engine and moved the box cars, causing the wheels of one to run over the leg of petitioner, thereby necessitating the amputation of his foot; at the time the minor was earning $13.80 a week and was entitled, under the Compensation Law of the state, to 65 per cent of his weekly wages for one hundred and twenty-five weeks.

In the alternative, plaintiff alleged that the defendant was then operating in Louisiana and Texas a railway, and that, should the facts of this case make the laws of Congress controlling, the said facts were solely within the knowledge of defendant, but all allegations as to negligence stated above were affirmed as to this liability and a lump sum of $6,000.00 for loss of foot was claimed. Contributory negligence was denied and defendant was charged with entire responsibility for the accident in negligently failing to keep a lookout and to give any warning before striking the cut of box cars.

In its answer, defendant admitted the accident, but denied all negligence, and averred that the rights of plaintiff were governed by the federal law.

The trial court, after deciding that the Compensation Law of Louisiana had no application, dismissed the suit on the ground that plaintiff had failed to prove negligence, an essential under the Federal Employer's Liability Act.

The evidence shows that the yard of the defendant company, which was over 4,000 feet long, consisted of the main lines and five switch tracks, which ran the entire length of the yard, but were connected at each end. Plaintiff, an ignorant colored boy, was one of a gang of five laborers who were putting new cross-ties under switch track No. 3 at a point near the south end of the yard. About 10:00 a. m., October 30, 1926, while the rest of the gang of laborers were working near the north end on track No. 3, and switching engines were still shifting cars in the north end of the yard, and a string of eighteen box cars were standing on track No. 4, which was just east of track No. 3, Peterson, without asking permission of his boss, or advising his purpose, left his gang, walked for a block toward the north end of the yard and hid himself under the fourth car from the south end of the string of eighteen box cars to answer a call of nature.

He says that he was in no hurry and that it had been his custom to go into the woods for this purpose and that he had never gone under a box car before; he knew the switching was going on in the yard and that he was running a risk by going under the car, but failed to advise anyone.

Thomas and Doherty, both employees of the railroad company, testified that he had ample opportunity to go into the woods or weeds on either side of the yard, where it was the general custom to go, and the condition of the yard, as shown in a photograph which was taken within one week after the accident, seems to confirm this testimony. Furthermore, the fact that the boy admits walking north half a block tends to show that he could have gone around the end of the cars and reached the woods east of the yard more promptly. Track No. 4, on which the box car was standing at the time that the boy's foot was cut off, was used indiscriminately with

the other switch tracks in the yard for making up trains, one-half of which moved in interstate commerce and one-half in intrastate commerce. It had been used for that purpose just prior to the accident and was to be used for such purpose immediately after the accident.

It has been repeatedly held that the State Compensation statute has no application if the federal statute applies to an injured railroad employee.

N. Y. C. Ry. Co. vs. Winnfield, 244 U. S. 147, 37 S. Ct. 546, 61 L. Ed. 1046; L. R. A. 1918C, 439 Ann. Cas. 1917D, 1139; St. Louis (etc.) R. R. Co. vs. Seale, 229 U. S. 156, 33 S. Ct. 651, 57 L. Ed. 1129; Sec. 30, Act 20 of 1914, as amended; Hamilton vs. L. R. & N. Co., 162 La. 842, 111 So. 184.

The Supreme Court of the United States, in its decisions governing injuries to employees of railroad companies, has developed two general conclusions: If the injury occurs to one engaged in the operation or movement of rolling stock, the liability under the Federal Employer's Act depends upon whether the movement at the moment of the accident in which the injured person was engaged was wholly intrastate or interstate. This conclusion is illustrated by the following cases: C. B. & Q. R. R. Co. vs. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; Dupuis vs. La. Ry. & Nav. Co., 155 La. 953, 99 So. 709.

If, on the other hand, the injured employee was engaged at the time of the accident in the repair or construction of some facility of commerce, such as tracks, switches, bridges, etc., which facility is used both for interstate and intrastate commerce, then the employment is so closely related to interstate commerce as to bring it within the exclusive dominion of the federal act. This latter principle is illustrated by the leading case of Pederson vs. D. L. & W. R. R. Co., 229 U. S. 146, 33

S. Ct. 648, 57 L. Ed. 1126, in which case the defendant was engaged in operating a railroad in interstate commerce and intrastate commerce. The deceased was a workman employed by defendant as a member of a repair gang. At the time of the injury the deceased was carrying from a tool house to a bridge, which was to be repaired, some bolts and rivets to be used the following day in repairing a girder of the bridge. The repairs had not yet been commenced. Over this bridge there regularly moved cars in both interstate and intrastate commerce. While the deceased was carrying the bolts he was run into and injured by an intrastate passenger train of the defendant. The Court held that the deceased's work was so closely related to interstate commerce as to be in legal contemplation a part of it, and that the only right of recovery existed under the Federal Act. The Court said:

"Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars; and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition, and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency * * * in its cars, engines, appliances, machinery, tracks, roadbed, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely re-

lated to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements, and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?"

In the case of Chicago K. & S. R. R. Co. vs. Kindlesparker, (C. C. A.) 234 Fed. 1, at page 6, the court said:

"When the decisions are considered, which, on the one' hand, allow recovery, and on the other disallow recovery, under the Federal act, a marked distinction is found concerning the responsibility of a carrier for injuries suffered by an employe engaged in repairing an instrument interstate in character, and injuries received by an employe using or operating the same kind of an instrument while handling only intrastate traffic. As to the repairer, his service partakes of the character of the instrumentality; as to the operative, his service partakes of the character of the traffic. The reason for this distinction is that the repair is so directly and vitally related to commerce between the States as to characterize the work of the employe engaged in the repair as an act of interstate commerce. This distinction, for example, is well stated by Judge Woolley in Boyle vs. Pennsylvania R. Co., 228 Fed. 266, 142 C. C. A. 558, where, in view of the facts of that case, the reason for denying application of decisions which concern the repair and not the use of the instrumentality in question received expression (228 Fed. 269, 142 C. C. A. 561):

" 'There is a distinction between employment in preparing an instrument of commerce for use, and employment in using such an instrument in commerce. Preparation of an instrument for use in commerce of both kinds necessarily means preparation for use in commerce of either kind, and as one kind is interstate commerce, it follows logically that such preparation is for use in interstate commerce, but employment connected with the actual use of such an instrument is a part of in-

trastate or interstate commerce according as the instrument is in use in commerce of one kind or the other.' "

These principles were recently applied by the Supreme Court of Louisiana in the case of Hamilton vs. L. R. & N. Co. (this same defendant), 162 La. 842, 111 So. 184, which involved the issue of law (exactly the same as the issue here) whether a track laborer, injured while engaged in repairing a switch of the L. R. & N., was engaged in interstate commerce, so that his action came under the Federal Act, or whether he was engaged in intrastate commerce so that the State Act would apply. The Court held the Federal Act applicable, saying:

"The defendant is a common carrier by railroad, and, although its own line does not extend beyond the limits of the state, yet it connects at both termini with other lines which do extend beyond the state, and a large volume of both interstate and intrastate commerce flows over its rails. Defendant is therefore actually engaged in interstate commerce; and the relative volume of the one business to the other has no bearing on the fact that it is so engaged. Philadelphia & R. R. Co. vs. Polk, 256 U. S. 332, 41 S. Ct. 518, 65 L. Ed. 958; Chicago K. & S. R. Co. vs. Kindlesparker, (C. C. A.) 234 F. 1.

"It follows, therefore, that defendant's main track and bridges are instrumentalities of interstate commerce, as are also all sidings needed or useful in operating trains carrying interstate commerce; and the presumption is that all sidings appurtenant to a trunk line railroad track are needed or useful in the operation of all trains, including those engaged in carrying interstate commerce, unless it be shown that such sidings are in fact used exclusively for the accommodation of intrastate traffic only."

See also N. Y. C. R. R. Co. vs. Porter, 249 U. S. 169, 39 S. Ct. 188, 63 L. Ed. 536; and Pa. & Reading Ry. Co. vs. De Donato, 256 U. S. 327, 41 S. Ct. 516, 65 L. Ed. 955.

Under the Federal Employer's Liability Act, plaintiffs must prove negligence in order to recover. In this case he has failed to meet this responsibility.

Although the defendant had a proper crew, and was performing its switching operations in the usual manner, to the knowledge of plaintiff, he unnecessarily put himself in a dangerous place without giving any warning to any employee of the defendant company.

On this point see Hammers vs. Colorado Southern, N. O. & Pacific R. R. Co., 128 La. 648, 55 So. 4, 34 L. R. A. (N. S.) (685), where the Court uses the following language:

"We do not think that exercise of due care on the part of a railroad company requires it to look under its stationary cars, before moving them, to ascertain whether somebody is not sitting on one of the rails.

"The learned counsel argue the case as if some one at the crossing, or some one using the crossing, or the space round about it, in the legitimate, ordinary way, had been injured. But plaintiff was not at the crossing. He was close to the front truck of the car, and the car was 36 feet long; and he was neither using the crossing nor the space about it in the legitimate, ordinary way. He was in a position where a lookout on the cars could not possibly have discovered him. And, we repeat, it is not the duty of a railroad company, before attempting to move a stationary car on a side track, to look under the car, to ascertain whether somebody may not be under it."

See also, the following: Aerkfetz vs. Solon Humphreys et al., Receivers, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758; and DeBaur vs. LeHigh Valley R. R. Co., (C. C. A.) 269 Fed. 964.

In the case of Atchison, Topeka & Santa Fe vs. Wyer, 8 F. (2d) 30, 8 Circuit Court of Appeals, the Court, in discussing the question of liability, said:

"Labatt, in his work on Master and Servant, states several limitations:

"Section 209-a: 'Both upon principle and authority it is clear that a master cannot be deemed culpable on the ground of an omission to give warning, where the servant already possesses sufficient knowledge of the conditions to enable him to take appropriate precautions for safeguarding himself.'

"Section 236: 'No right of action is established where, taking into consideration the nature of the work assigned to the servant, the master had no reason to expect the contingency of the servant placing himself in such a· position as to incur the danger with regard to which it is alleged that he should have been instructed.'

"Section 241: 'Before an employer can be held liable for a failure to warn, there must be something to suggest to him that a warning is necessary. Unless this necessity was or ought to have been known to him, he is considered to be justified in acting upon the assumption that the servant understood the dangers to which he was exposed, and would take appropriate precaution to safeguard himself.' "

Plaintiff relies upon the case of the Union Pacific Railway Co. vs. Hadley, 246 U. S., p. 330, 38 S. Ct. 318, 62 L. Ed. 751, where the United States Supreme Court held that the railway company was liable for injuries to a brakeman who was killed in a snowstorm not in his place of duty, but in the caboose at the rear end of the freight cars of a standing train, when a rear end collision occurred. This decision is not applicable here because the Supreme Court found that the railway company was guilty of negligence in the operation of its train coming from behind.

For above reasons the judgment is affirmed.