### CRYSEL v. TEXAS & P. RY. CO. *
No. 4696.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1934.

Jones & Jones, of Marshall, and Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellant.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellee.

MILLS, Judge.

Plaintiff brings this suit, claiming compensation under the provisions of our Workmen's Compensation Act (No. 20 of 1914, as amended).

After the filing of answer he sought to amend by making additional allegations and by, in the alternative, claiming compensation under the Federal Employers' Liability Act (45 USCA §§ 51–59). An objection to the allowance of the amendment was sustained by the lower court.

Article 419 of the Code of Practice reads: "After issue joined, the plaintiff may, with the leave of the court, amend his original petition, provided the amendment does not alter the substance of his demand by making it different from the one originally brought."

The alternative demand in the present case does not merely consist of a prayer for a different relief based upon the same state of facts, but embraces an entirely different cause of action involving additional facts and rights under an entirely different law. Negligence, excluded from the state act, is the very foundation of the federal act. Under the circumstances, we think, the lower court committed no abuse of discretion in rejecting the amendment. Day v. New Orleans Pac. Ry. Co., 35 La. Ann. 694.

The opinion of the trial judge supporting the judgment appealed from rejecting plaintiff's demand so cogently and correctly covers the facts and the law in the case that we adopt it as our own:

576

"The present suit is instituted to recover under the state Workmen's Compensation Act, and one of the defenses to the suit is, that defendant company operates an interstate railroad, and that plaintiff's right of recovery, if any, is to be governed by the Federal Liability Law and not the state law.

"There is no conflict in the testimony as to the character of work plaintiff was doing before and at the time of the injury; and there is no conflict on the question raised by the defendant that it is an interstate railroad.

"The testimony shows that plaintiff was one of a gang which for some time had been engaged in repairing a bridge on the main line of the defendant company over Cross bayou; the gang had already removed the old wooden girders and replaced same with a steel span, the actual work of replacement being completed about 8 a. m. on the day of the alleged injury. The same gang was then put to work by their foreman removing the old timbers from the bayou, some of which were placed on the bank and some were placed directly on a flat car of the defendant company. Those which were being placed on the flat car were destined to be sent to Texarkana to be creosoted for future use, or, in other words, that part was a salvaging job. After being placed on the flat car, they were taken to a side track and a day or two later were actually moved to Texarkana, in another state, in a train carrying both interstate and intrastate freight.

"At the time of the accident, the cars on which the timbers were being loaded were no part of any train then made up or being made up to carry them away from Shreveport; and, in fact, at that particular time no one knew exactly when they would be moved to Texarkana, but did know that in the course of ordinary business would be so moved.

"The cars with the timbers on them were actually billed to Texarkana, and were picked up by the regular switch engine and placed in a regular train.

"The other timbers removed from the bayou which were not sent to Texarkana were destined to be taken away and used as wood, and were so taken away and so used at a later date. Thus, all of the old timbers removed from the bridge were taken out of the bayou and moved off entirely from the right of way of the defendant railroad.

"The first question at issue is whether the case, under the facts, is governed by the Federal Employers' Liability Act or the state Compensation Act.

"If the plaintiff, at the time of the injury, was engaged in interstate transportation or in work so closely connected therewith as to be a part thereof, then he comes under the federal law.

"It may be conceded that the Supreme Court of the United States was, in the beginning, very liberal in its interpretation of the law as to the class of employees coming under it, but same has gradually become more and more restrictive; one of the latest cases being that of Chicago & N. W. R. Co. v. Bolle, 284 U. S. 74, 52 S. Ct. 59, 76 L. Ed. 176.

"In the case of Peterson v. L. R. & N. Co., 9 La. App. 714, 119 So. 759, the organ of the court stated that the decisions had developed two main classes: Injuries to employees engaged in the operation or movement of rolling stock; and those engaged in the repair or construction of some facility of commerce, such as tracks, switches, bridges, etc.

"The defendant contends that, by reason of the facts, the case falls under both headings.

"First taking up the question of the maintenance of the tracks of an interstate road, it may be conceded that one who is engaged in working on an interstate facility which has never been used in interstate transportation does not come under the act; but, if the facility be an interstate track which is in such use, then, if an employee be injured while working on the track, he does come under it. And he comes under it if he be injured while transporting material which is to be used in the repair or maintenance of the track. On this phase, see Pedersen v. Delaware, Lackawanna, & Western Railroad Company, 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1126, Ann. Cas. 1914C, 153; Peterson v. Louisiana R. & N. Co., 9 La. App. 714, 119 So. 759; Hamilton v. Louisiana R. & N. Co., 162 La. 842, 111 So. 184. The latter two cases we cite to show that the Louisiana courts are still strictly applying the doctrine laid down in Pedersen v. D., L. & W. R. Co.

"Thus we have the federal law applying to cases of actual work on the track itself and to work preparatory to actual work on the track, and this is plainly the law in Louisiana.

"When the actual repair work has been completed, and an employee is engaged in removing from the right of way either the old material or new material not used, and is injured, does he then come under the federal law? The later decisions of the Supreme Court of the United States do not detract, it seems to us, from what that court held in the Pedersen Case, and, while that court has never been called upon to pass upon the question propounded above, we do not think the Pedersen Case has ever been overruled, either in fact or principle.

"The holding of the lower court in Illinois Cent. R. Co. v. Cousins, 241 U. S. 641, 36 S. Ct. 446, 60 L. Ed. 1216, based on the Pedersen Case, was reversed, but the facts were entirely different. See Chicago & N. W. R. Co. v. Bolle, 284 U. S. 74, 52 S. Ct. 59, 76 L. Ed. 176. And it seems to us that in New York Cent. R. Co. v. White, 243 U. S. 188, 37 S. C..

247, 61 L. Ed. 670, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629, the court, at least impliedly, approved the Pedersen Case.

"The federal court has had the question up only one time and that in 1915 in Philadelphia, B. & W. R. Co. v. McConnell (C. C. A.) 228 F. 263, in which the Court said: " 'If, as held in the Pedersen Case, carrying materials to the place where repair work is to be done is so closely related to interstate commerce as to be a part of it, then carrying materials from the place after repair work has been done is just as closely related to, and, for the same reason, must be a part of it. The questions asked and answered by the Court in the opinion in the Pedersen Case, we believe apply with equal force and precision to the facts of this case. Here the work was not being done independently of the interstate commerce in which the defendant was engaged, nor was the performance of the work a matter of indifference so far as that commerce was concerned. The removal of the old rails from between the tracks on the roadbed of a railroad over which moves heavy traffic, both interstate and intrastate, constitutes keeping the tracks and roadbed in suitable condition for interstate commerce, and is as necessary for the proper maintenance of the tracks and roadbed as renewing the tracks. The work of which the plaintiff's was a part, was the repair of the roadbed by replacing old rails with new ones. This included removing old rails and installing new ones. The work of removing old rails was not complete when they were lifted from their place upon the ties and tossed upon the roadbed, but was complete only when they were carried away from the place where they lay between the tracks. The removal of oil rails was as much a part of the repair work as the bringing of new rails to the place to be repaired. If this be true, this case is within the Pedersen Case, and believing it to be true, we feel that this case is ruled by the principle declared by the Supreme Court in that case.'

"However, the question has been passed on several times by the state courts.

"In Long v. Biddle, 124 Ark. 127, 186 S. W. 601, it was held that one engaged in removing material which has been taken out of a bridge in repairing it, by burning what is of no use, and storing that which is usable, is within the protection of the federal law; that it was a part of the work of construction to remove the materials a safe distance away from the tracks.

"To the same effect is Manes v. St. Louis-San Francisco R. Co., 205 Mo. App. 300, 220 S. W. 14, in which case the court noted the later federal cases; likewise Hargrove v. Gulf, C. & S. F. R. Co. (Tex. Civ. App.) 202 S. W. 188, and Cherpeski v. Great Northern R. Co., 128 Minn. 360, 150 N. W. 1091.

"In Kusturin v. Chicago & A. R. Co., 287 Ill. 306, 122 N. E. 512, the court goes even further and holds: " 'We are of the opinion that the removal of such old rails was a part of the general work of repairing the track. The fact that if those old rails remained on the right of way they would not interfere with the use of the track in interstate commerce is not controlling in determining the question whether the work of removing them was practically a part of the repairing of the road. As we view the matter, the removal of these old rails was an incident to such repairing and necessary to a proper upkeep of the track. To hold that such work was not a part of the work of repairing the track would be analogous to holding that while the building of a scaffold which surrounds a house under construction is a necessary part of the work of construction, the removal of such scaffold when the house is built is not. A house surrounded by a scaffold could, no doubt, be used without such scaffold being taken down; but no one would contend that it was not properly a part of the work of completing such house to remove the scaffold when its presence was no longer necessary. So, in the repairing of the track, the removal of the old rails is analogous to the removing of the tools used in making such repairs or the removal of the hand car on which the materials were conveyed to the place where the repair work was done. It was within the scope of the work necessary to keep the track and roadbed in that condition which good railroading demands, whether such railroading be interstate or intrastate. Had the injury to the defendant in error occurred during a single act of removing an old rail from its place in the roadbed onto the flat car, no one would contend that the placing of that rail on the car was not a part of the act of repairing the road; and we believe that to split the scope of employment in such a case by holding that the work of removing the old rails, though in fact but a continuation of the work of putting new rails into the track, was nevertheless not a part of such repair, would constitute an unwarranted refinement of reasoning, not contemplated by the framers of the act, nor by the Constitution by which said act is limited, and would work an unjustifiable hardship. We are therefore of the opinion that defendant in error at the time of his injury was engaged in interstate commerce and therefore came within the purview of the act.'

"Colorado holds the same way, but the case is not a strong one. Kentucky and Utah seem to take a contrary view.

"Thus the great weight of authority is as stated.

"While there is no testimony in the record showing that the old timbers, if left in Cross bayou, would interfere with the operation of trains, yet we think they would sooner or later do so. Cross bayou is classed as a navi-

gable (perhaps a myth in this day) stream. But, whether so or not, the leaving of the timbers in the stream, wholly or partially obstructing the flow of water, would sooner or later have its effect on the safety of the bridge and approaches, and, as said in some of the cited cases, the proper operation and maintenance of a railroad requires not only that repairs be made, but also the removal of the old material. Such removal is just as much a part of the repair of the track or bridge as is the bringing of the material there.

"We realize that on this phase of the case it can be decided either way, depending on which line of authority is acceptable as being the more reasonable.

"Personally, we can see no great difference in taking material to a bridge, and removing the old material; one is just as necessary as the other.

"We think that is the more reasonable view, and certainly the great weight of authority is that way, and we therefore hold that the accident is governed by the federal law.

"The demands of plaintiff under the state law are therefore rejected.

"T. F. Bell, Judge."

Plaintiff forcefully contends that there is a different rule as to company material and property of third persons in interstate commerce; that, with reference to the former, the interstate transportation only begins when the movement of the containing car is for the purpose of actually putting it into a train for transportation, and ends as soon as the car is placed on a side or holding track at the end of the shipment, citing Lehigh Valley R. Co. v. Barlow, 244 U. S. 183, 37 S. Ct. 515, 61 L. Ed. 1070; Chicago, B. & Q. R. Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941.

As we think the lower court correctly based its finding as to the interstate character of the work upon the fact it was a direct continuance and completion of the job of repairing the bridge, it is not necessary to pass on this point.

For the reasons assigned, the judgment of the lower court is affirmed.