O’NIELL, C. J.
Defendant has appealed from a judgment allowing plaintiff $15,000 damages for the death of her husband. He fell from a railroad train and was killed, on the 11th of November, 1918, while employed as train conductor.
The suit was founded primarily upon the federal Employers’ Liability Act (U. S. Comp. St. §§ 8657-8665). In the alternative, plaintiff asked for damages under article 2315 of the Civil Code. And, again in the alternative, that is,, if the court should find that she was not entitled to either compensation under the federal statute or damages under article 2315 of the Civil Code, then she claimed compensation under the state Employers’ Liability ■Act (Act 20 of 1914, as amended by Act 243 of 1916, and by Act 38 of 1918). The district judge held that the case was governed by the federal statute. Answeriqg defendant’s appeal, plaintiff renews her alternative demands, praying, first, that the judgment should be affirmed, under authority of either the federal statute or the article of the Code; and, second, that, if the judgment be not affirmed, then that she be allowed compensation under the state Employers’ Liability Act.
Our opinion is that the case is not governed by the federal Employers’ Liability Act, because plaintiff’s husband was not engaged in an interstate transaction — in fact the train which he was in charge of was not carrying interstate passengers, baggage, mail, express or freight — at the time of the accident. It was a shuttle train, that did nothing but carry workmen from Alexandria to Camp Beauregard every morning and bring them back every' night. Alexandria and Camp Beauregard are both in Louisiana, only six miles apart. The train oscillated daily, without ever going beyond either the city or the camp.
The railroad itself extends only from New Orleans to Shreveport, and is therefore entirely within the state. It was alleged in the petition in this suit, and admitted in the answer, that the company was engaged in interstate as well as intrastate commerce, meaning, of course, that the company generally handled passengers and freight that had come from or were going into another state.
It is argued on behalf of appellant that the admission that the railroad company was engaged in interstate as well as intrastate commerce deprived the plaintiff of a right of action for compensation under the state Employers’ Liability Act, as it stood when this *295 accident occurred, before tbe statute was amended by the Act 244 of 1920.
During the argument of the case, the writer of this opinion was under the impression that our ruling in the case of Bergeron v. Texas & Pacific Railway Co., 144 La. 225, 80 South. 262, repeated in Salvaggio v. Illinois Central Railroad Co., 151 La. 66, 91 South. 549, would control this case, and would deny plaintiff a right of action under the state Employers’ Liability Act. The decisións, however, did not maintain that the fact that an intrastate • railroad generally handled interstate as well as intrastate passengers or freight should, of itself, relieve-the railroad company from the effect of the •state Employers’ Liability Act, before it was amended by the Act 244 of 1920. The language of section 30 of the statute, before it was amended, did not declare, or necessarily mean, that the statute did not apply at all to a railroad company whose lines were entirely within the state, if the railroad company generally handled interstate as well as intrastate passengers or freight. Before it was amended, the section read:
“Section 30. 1. Be it further enacted, etc., that this act shall hot he construed to apply to any employer acting as a common carrier while -engaged in interstate or foreign commercé by rdilroad, which employer, by reason of being engaged in interstate or foreign commerce by railroad, is not subject exclusively to the legislative power of the state of Louisiana, or for which employer and the employee thereof a rule of liability or method of compensation has been, ■or may be, established by the Congress of the United States; nor shall it apply to any employee of such common carrier injured or killed while so employed; and nothing in this act shall be construed to apply to any work dohe by, nor shall any compensation be payable under this act to, the master, officers, or any member of the crew of any vessel used in interstate or foreign commerce which said vessel is not registered or enrolled in the state of Louisiana.
“2. Whenever an employee of a common carrier engaged in interstate or foreign commerce by railroad shall sustain a personal injury by accident, arising out of and in the .course of his employment, resulting in his dis-I ability or death, it shall be presumed prima 'facie that such employer was, at the 'time of the accident, engaged in such commerce.”
What we held in the Bergeron Case, and again in the Salvaggio Case, wa? that the state Employers’ Liability Act did not 'apply to an injury to a railroad employee, happening while the railroad company itself was •engaged in interstate commerce, even though the injured employee was not engaged in an interstate transaction at the time óf the accident. In each of those cases, the railroad extended beyond the state line, and was therefore continuously engaged in interstate commerce. Section 30 of the statute declared, before it was amended, that it was not applicable “to any employer acting as ,a common carrier while engaged in interstate or foreign commerce by railroad.” The expression “while engaged in interstate or foreign commerce” meant, quite plainly, that there might be times when an “employer acting as a common carrier” would be, and times when such employer would not be, engaged in interstate or foreign commerce. The second paragraph of section 30 of the statute, before it was amended, left very little doubt about the meaning of the first paragraph. The second paragraph declared that, whenever a railroad employee sustained an injury by accident, if his employer was a common carrier engaged in interstate or foreign commerce, the presumption, prima facie, would be that the employer was engaged in interstate or foreign commerce at the time of the accident. In other words, the fact that the common carrier was, generally, or at times, engaged in interstate or foreign commerce would create a presumption, prima facie, tl^at the common carrier was engaged in such commerce at the moment of any accident causing personal injury to an employee. If that was not the meaning of the second paragraph of section 30, before it was amended, it meant nothing; for, surely, it *297 would have been meaningless to say that, if an accident happened on a railroad engaged in interstate or foreign commerce, the presumption would be that the railroad was engaged in interstate or foreign commerce.
 We must bear in mind that the presumption was, not that the employee was engaged in an interstate or foreign transaction at the time of the accident, but that the employer was engaged in such commerce at the time of the accident. It is quite certain that the presumption could not have been only prima facie, or subject to rebuttal, with regard to a railroad line entending into another state and therefore always engaged in interstate commerce. The presumption was applicable only to short-line railroads, entirely within the state, and not always engaged in interstate commerce. If the road was, as in this case, accustomed to handling interstate passengers or shipments, the presumption was that the road was so engaged at the time of any accident causing personal injury to an employee of the road. But the presumption, in such case, that the employer was engaged in interstate or foreign commerce at the time of the accident was only prima facie. It was subject to rebuttal, by proof to the contrary. Surely, the statute did not mean that, to make such prOof, it was necessary to prove that there was no interstate or foreign transaction going on anywhere along the entire line of railroad, or being conducted in any office, or by any officer of the company, at the moment of the accident. That would have been nonsensical. By such roundabout way of requiring proof that could not possibly be furnished, section 30 of the statute thus would have relieved every railroad entirely within the state from the effect of the law, which, in plain terms elsewhere, was made applicable to such railroads. We refer particularly to paragraph (a) of subsection 2 of section 1 of the statute, declaring:
“That this act shall apply only to the following: * * * . 2. Every person performing services arising out of and incidental to his employment in the course of his employer’s trade, business or occupation in the following hazardous trades, businesses and occupations: (a) The operation * * * of railways and railroads, * * * street railways,” etc.
And we refer to the explanation in the same subsection, viz.:
“ ‘Railways’ and ‘railroads’ also includes work in or about depots, power houses, roundhouses, cars, locomotives and all other appurtenances, and in private yards, terminals, switches, etc., and work on railroads for express companies.”
The language which we have quoted makes it impossible to believe that the statute was not intended to apply at all to a railroad, company whose tracks were entirely within1 the state, if the company generally, or at times, handled interstate business.' That would be the consequence of our holding that, • in order to subject an intrastate railroad to the effect of the statute, before section 30. was amended, it was necessary to prove that, at the time of an accident causing personal injury to an employee, there was no interstate ok foreign business going on anywhere1 on the road. Our opinion, on the contrary, is that it was sufficient, to bring a case within the statute, to show that, in the particular employment in which the employee was injured, the employer was not engaged in interstate' or foreign commerce. Of course, if the employer, as far as that employment was concerned, was not engaged in interstate or foreign commerce, the employee was not then | engaged in such commerce. The showing, that the train itself, on which the employee was working at the time of the. accident, was not engaged ■ in interstate or foreign commerce was a sufficient showing that the em-' ployer, as far as that employment was con-1 cerned, was not engaged in interstate or foreign commerce. And, as the railroad itself was entirely within the state, the presump-, tion, prima facie, that the employer was en *299 gaged in interstate or foreign commerce at the time of the accident, did not continue.
The ruling made in the Bergeron Case, and repeated in the Salvaggio Case, was in strict accord with the language of section 30 of the statute, before it was amended; that was, that the statute did not apply to a case where the employer was, at the time of the accident, engaged in interstate or foreign commerce by railroad, even though the transaction in which the employee was engaged was not a part of such interstate or foreign commerce. There are some expressions in the opinion, in each case, that might warrant the inference that the statute, before the amendment of 1920, was not applicable to any railroad that was ever engaged in interstate or foreign commerce. But in each case we were dealing with a big interstate 'railroad, that was continuously engaged in interstate commerce; and there was no occasion for observing a distinction between such a railroad and an intrastate railroad. .The amendment of section 30 of the statute, by Act 244 of 1920, makes the law applicable ■to any case of injury or death of a railroad employee, by accident occurring while both .the employer and the employee are engaged 'in an intrastate operation or movement, not governed by federal legislation.
The remedy afforded by the Employers’ Liability Act excludes all other rights and remedies, and therefore denies the plaintiff a right of action under article 2315 of the Civil Code. Section 34 of Act 20 of 1914.
• According to paragraph (a) of subsection 2 of section 8 of the Act 38 of 1918, there being no surviving child of the deceased employee, in this cáse his widow is entitled to 25 per cent, of his weekly wages for 300 weeks. The wages amounted to $50 a week.
The judgment appealed from is amended by reducing the amount of compensation allowed by the district court from $15,000 to $3,750, payable in '300 weekly installments of $12.50 each, commencing on the 18th day of November, 1918, with interest at 5 per cent, per annum on each installment from the day it was due; all past-due installments, with the interest accrued therein, to m collectible as soon as this. decree shall have become final. The costs of this appeal are to be borne by the appellee; all other court costs are to be borne by appellant.
OYERTON, J., recused.