## MILES v. METZGER DAIRIES et al.
### No. 4933.

Court of Appeal of Louisiana. Second
Circuit.
Feb. 5, 1935.

Irion & Switzer and Henry F. Turner, all of Shreveport, for appellant.

Jackson & Smith and Chas. L. Mayer, all of Shreveport, for appellees.

MILLS, Judge.

On the morning of October 28, 1933, plaintiff had parked a Buick sedan, heading north on the right-hand side of Pierre avenue near Weinstock street in the city of Shreveport. He was standing on its left with one foot in the street and one on the running board, reaching in to unlock the switch, when he was run into from the rear by the truck of defendant, Metzger Dairies. He was pinned between the two cars and suffered a comminuted fracture of the right leg, between the ankle and knee.

The truck was about 18 feet long by 6 feet wide and was being used for the delivery of milk. It had been stopped at the curb from 18 to 25 feet directly in the rear of the Buick. Its brakes were in working order, but, contrary to a city ordinance, it was not equipped with a rear-view mirror. It was fitted with a governor which materially reduced its possible speed. The driver, return-

ing to the truck, mounted to the seat and, without looking to the rear for traffic, started up, cutting out to his left to go around the parked Buick. Just as the front of the truck got even with the rear fender of the Buick, it was struck between the bumper and the left front wheel by the right front wheel of a Ford car coming from the rear. The force of the collision broke its brake and deflected the head of the truck to the right so that it ran into the side of the Buick, catching plaintiff between the cars. Defendant's truck driver gave no signal, did not look to the rear, and did not see the Ford until it was beside him a few feet away. He says:

"Q. He was behind you? A. At the side.

"Q. You saw him one time? A. Yes.

"Q. And that was when he was a few feet away from you and to your left? A. Yes.

"Q. You saw him when he was about ten feet from you? A. Yes.

"Q. When you started to pull out from the curb was Mr. White in sight then? A. No, I don't know whether he was in sight. I didn't see him.

"Q. Did you look? A. Not at that time, no sir.

"Q. How close was he to your truck, that is the distance between your truck and his automobile, not forward but sideways, when you first saw him? A. He was not so far, right up against me; He tried to pass another car."

This largely corroborates the testimony of Walter White, the driver of the Ford. He says that he had blown out a valve in his engine and was on the way to a garage to have it fixed. That he could not have been going over 15 miles per hour. That he was traveling north in the same direction the truck and Buick were headed, on his right-hand side of the street, far enough out to avoid hitting parked cars. That he saw the truck. That just as he got to it, it, without signal or warning, pulled out in front of him. That as a car was coming from the opposite direction, he could not turn to the left. That he applied his brakes immediately but could not avoid the collision. These salient facts are not materially contradicted.

The defense is that the truck had driven into the street and straightened out parallel with the curb in ample time for the driver of the Ford to have seen it and prevented the collision. The fact that the truck was struck on its left front tends to contradict this; nor do we think that an 18-foot truck, in the situ-

ation disclosed, could have straightened out in its proper traffic lane in the distance traveled. We think that the negligent action of defendant's driver in pulling out without looking, together with the approaching car, confronted the driver of the Ford with an emergency not of his own creation, in which he acted with reasonable prudence. While the width of Pierre avenue is not proven, few city streets are wide enough to permit four cars to pass abreast without danger.

This is not an action between the drivers of two colliding cars where the doctrine of contributory negligence applies. This plaintiff, being an innocent third person suing only the owners of the truck, is not concerned in this action with the possible negligence of the driver of the Ford beyond the issue of proximate cause.

■ The driver of the truck was grossly negligent in pulling out from the curb, into the lane of traffic coming from the rear, without looking. This negligence on his part was at least a proximate cause of the accident.

In Huddy's Cyclopedia of Automobile Law, vol. 3–4, p. 86, we find the following rule: "In starting up from the curb, the driver must maintain a vigilant lookout, so as not to endanger approaching traffic." Rule 10 (a), title 2, § 3, Act No. 21 of 1932.

Considering that cars so starting, if properly parked, are compelled to make a partial left turn, the necessity for looking to the rear is obvious.

Viewing the facts as we do, we find ourselves under the unpleasant necessity of disagreeing with the learned trial judge, who rejected plaintiff's demand.

The Metropolitan Casualty Insurance Company of New York and the Commercial Casualty Company of New Jersey were made parties defendant, but it developing that the former was not an insurer of defendant, and the latter under a Texas contract and not subject to joinder, they have disappeared from the case.

■ Plaintiff demands for pain and suffering, $1,800; shock and bruises, $200; confinement and loss of wages, $200; and physician's bill, $175; a total of $2,375.

The injuries alleged are a comminuted compound fracture of the leg, general mashing, and ulcers causing a four months' disability. The only material injury, the crushing fracture of the leg, has reunited without permanent disability. The first cast was put on too tight, causing more than the usual pain. Two small pressure sores appeared but soon healed up. The first cast remained on seven weeks and two days. It was taken off and a second one applied for ten more days. In cases of fracture the pain eases rapidly after the first few weeks. It was extended unduly in this case by the tight cast.

No loss of wages is proven. The doctor's bill was $159.50. We consider that $1,200 is a reasonable allowance for the unusual pain and suffering.

For the reasons above assigned, the judgment appealed from is reversed and judgment is now rendered in favor of plaintiff and against the commercial partnership of Metzger Dairies, the partners, Carl Metzger and Dave Metzger, and Calvin Reese, its driver, in solido, in the full sum of $1,359.50, with 5 per cent. per annum interest thereon from January 15, 1934, until paid, and costs of both courts.