McBRIDE, Judge.
.This suit which, was consolidated with another for ;trial grew out of an automobile collision which occurred during a hard rainfall .about 5 :30 p. m. on- April 12, 1952, at the intersection formed by the inbound traffic .lane of Banks Street and. South Gayoso Street. Banks Street is a boulevard consisting of two roadways separated by a neutral ground approximately feet wide. South Gayoso Street consists of but a single roadway and intersects Banks Street at right angles. An automobile owned by Jane Fargason, which was ■being at the time driven by her father, Thomas B. Fargason, had been parked on Banks Street in-front of a-restaurant into which Thomas B. Fargason entered in order to make a purchase. Upon leaving, the restaurant Fargason entered the automobile and drove it away from the curb .and attempted to make a left-hand turn into South Gayoso Street. The Fargason automobile was struck in the middle of its left side by an automobile owned by Joseph H. Terrell, which was being operated by Wilbert J. Ray, on Banks Street in a db rection toward the Mississippi River. Both cars were damaged. Terrell sues Thomas B. Fargason and the National Surety Corporation, the liability insurer of the Fargason automobile, claiming the sum of $296.08, representing the damage to his automobile. After a trial in the lower court plaintiff recovered judgment for the •amount prayed for, and the defendants have perfected this appeal.
The driver of the Fargason automobile is charged with negligence in several particulars: in driving the automobile from its parked position alongside the curb without observing whether there were approaching vehicles on Banks Street; in attempting to malee a left turn directly in the path of the Terrell automobile; in failing to act in a reasonable and prudent manner under the prevailing circumstances, all of which it is averred amounts to violations of the local traffic ordinance. The defense, is that the accident was not occasioned by any fault on the part of the driver of the Fargason car, and that such damage as plaintiff may have -sustained was caused solely as a proximate result of the carelessness and negligence of his driver, Wilbert J. Ray. In the alternative, a plea of contributory negligence is urged in which the accident is ascribed to Ray’s negligence, it being alleged that he was driving at a speed far in excess of that allowed by law, failed to keep a proper lookout, failed to have his automobile under control, and in operating the automobile without lights at a time when visibility was obscured by the then existing weather conditions.
The gist of Ray’s testimony is that he was traveling about two feet from the neutral ground curb on Banks Street between 25--and 30 miles per hour, and.noticed the Fargason car parked adjacent- to the sidewalk curb. He was positive that when he reached a distance of about 10 or 15 feet *773 from the parked car, the driver thereof drove away from the curb and attempted to make a sweeping left turn across the inbound lane of Banks Street. He stated that the driver of the Fargason car neither gave a signal of his intention to leave the curb nor that he would make a left turn. Ray further stated that upon seeing ühe Fargason automobile in its position of danger, he applied his emergency brake, which effort on his part to avert a collision was unavailing, and that his car skidded about five feet before it struck the Fargason automobile, and then traveled for a distance of about ten feet after the collision.
Although Fargason’s wife was a passenger in the Fargason car, she was not placed on the witness stand by the defendants. The only testimony in the record emanating from Thomas B. Fargason was that given on his cross-examination by plaintiff’s counsel. Fargason testified that it was raining “very hard” and that after leaving the restaurant he entered his car immediately starting the motor, and moved from the curb and attempted to turn left into Gayoso Street toward his residence. He states that he started the forward motion of his automobile only after having looked in the rear-view mirror for approaching traffic and that he saw nothing. Fargason admits that all of the windows were closed, and that just as the front part of the automobile had passed the uptown neutral ground curbing, it was struck by the Terrell automobile which he had never seen.
Counsel for the defendants in their argument before us assigned the reasons for not having placed Mrs. Fargason on the witness stand. She was regularly ' subpoenaed and was present in the courtroom at the trial, and was tendered by counsel to the plaintiff, who refused to place her on the stand as his witness. • Defendants’ counsel freely admit that at the time this case was tried in the court below there was pending in the district court a suit brought by Mrs. Fargason against the liability insurer of the Fargason automobile for a large amount of damages for' personal injuries, in which she alleged that the impact of the automobiles caused her to be thrown from the car in which she was riding to the ground, and that the accident was the proximate result of the negligence of her husband. Counsel stated that in view of Mrs. Fargason’s suit against the insurer of the car in which she was riding, they did not deem it proper to call Mrs. Fargason as a witness for the defendants. To say the least, this seems to be an anomalous situation. Here we'have a case in which the defendants claim that the accident was occasioned by the neligénce of Ray, who was driving Terrell’s car, while at the same time Mrs. Fargason, who was her husband’s passenger, was plaintiff in a pending suit directed against the insurer of the Faragson car, in which she specifically charged her husband with being solely at fault in the accident.
The evidence convinces us that Fargason was guilty of several acts of negligence. In the first place, he violated the provisions of Ordinance No. 18,202, C.C.S., City of •New Orleans, .and LSA-R.S. , 32:235, in not giving the proper hand signal • indicating his intention of leaving the 'curb and make a left turn across tire inbound traffic lane of Banks Street. Secondly, we do not think that the glance by Fargason at his rear-view mirror constituted such precautions as a normally prudent person would have taken to apprise himself of the existence-of approaching, traffic in view of the weather conditions prevailing when the ill-timed move from the curbing was made. Had he made a proper survey of, traffic conditions he could and would have seen the Terrell car which was in close proximity.' Thirdly, Fargason attempted a left turn without ascertaining that the turn could 'be made without danger to normal overtaking and oncoming traffic, it being his duty to have yielded, the right of way to such, vehicles, -contrary to the provisions of'LSA-R.S. 32:235,- and section 52 of the local traffic ordinance.
It has been almost uniformly held by our three Courts of. Appeal that one should not make ■& left turn across a highway unless that turn can be made without *774 danger to normal overtaking ar>d oncoming traffic and with a reasonable degree of safety. Some courts have held that the making of a left turn by a motorist is one of the most dangerous maneuvers. See Michelli v. Rheem Mfg. Co., La.App., 34 So.2d 264. Fourthly, Fargason also violated the provisions of the traffic ordinance, which made it his duty to be on the left-hand side of the driving lane before attempting the turning movement to his left. Thus, having found that Fargason was guilty of negligence we now proceed to a consideration of the plea of contributory negligence. It is first argued to us that Ray,, in view of the poor visibility, should have had the lights of his automobile turned on. The testimony of Ray is that he did have his parking lights illuminated, and we believe this to have been sufficient, it being a well-known fact that at that time of the year the darkness of evening does not fall so early as 5:30 p. m.
The chief reliance of defendants in connection with their plea of contributory negligence is that Ray was speeding at the time of the collision. The only evidence anywise indicating that the Terrell automobile was traveling at excessive speed emanates from three witnesses placed on the stand by the defendants. Two of these were youths who testified that they were in a drug store located one block from the scene of the collision, and that in looking out through the drug store window they saw the Terrell car pass and that it was traveling at least 45 miles per hour. They stated that from their experience they were able to estimate the speed at which they testified Ray was traveling. One of them owned a motor bike which could travel at about 35 miles per hour, and that the Terrell automobile was traveling at a faster rate than the maximum speed at which the motor bike was capable, of traveling. Asked how they could establish the maximum speed of the motor bike, they testified at one time they were riding thereon, and that a man in an automobile. who drove abreast of them told them that they were traveling 35 miles per hour. The other witness produced by the defendants who gave testimony as to the speed at which Ray was traveling was a Mrs. Markey, who lived, in the house next to the restaurant in front of which the Fargason automobile had stopped. Her statement is that she went to the front of her residence just prior to the accident to ascertain if the rain was coming under her door, and that she opened the door and stood looking out into the street, at which time she saw Fargason come from out of the restaurant, place a package in the rear of the car, and then go around to the left side and get in. She states that she noticed Fargason place the key in the ignition lock and then look around to see if anything was coming from the rear. She too looked to her left to see if there was any traffic approaching, and that Banks Street, so far as she could see, was clear for about 100 feet. However, . we notice at once that this witness’ testimony is not in accord with that of Fargason. Lest we forget, Fargason testified that he did not turn his head around to see what traffic was coming but merely looked at the rear-view mirror. Mrs. Markey claims that she . only looked back Banks Street after she had seen Fargason turn around to look.
As to the speed of the automobile, we have only the testimony of Ray on the one side -and the statements of two boys and Mrs. Markey on the other side. We do not believe that the testimony of the defense witnesses is of such weight as to say it ^credits the testimony of Ray. Their testimony evidently was not given serious consideration by the lower court, and needless to say, it makes no impression on our minds. The defendants have not successfully borne the burden of proving that Ray was guilty of negligence in the premises. The question as to speed is purely one of fact, and we believe that the trial judge correctly weighed and appraised the witnesses’ testimony and must needs have been, in view of his decision, of the opinion that the testimony of Ray was the most worthy of belief. There is no manifest error in this finding; not alone *775 that, we think that the finding of the trial court is eminently correct.
There is no dispute as to the amount of damages which plaintiff’s automobile sustained.
Therefore, for the reasons assigned, the judgment appealed from is affirmed.
Affirmed.