76 So.2d 60 (1954)
Walter B. GAY, Plaintiff-Appellant,
v.
UNITED STATES FIDELITY & GUARANTY CO., Defendant-Appellee.
No. 8231.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1954.
Rehearing Denied December 10, 1954.
*62 Julian E. Bailes and G. F. Thomas, Jr., Natchitoches, for appellant.
Russell E. Gahagan, Natchitoches, for appellee.
AYRES, Judge.
This is an action ex delicto brought by plaintiff against the defendant as the insurer of Joseph T. Breda, Jr., a rural mail carrier, to recover property damage and damages for personal injuries sustained in a collision involving the passenger car of plaintiff and a gravel truck owned by P. K. Wood, driven and operated by Ray Tilley.
Plaintiff alleged that Breda was guilty of gross, willful and wanton negligence in driving his automobile into the highway in front of his automobile and with entering the highway without first making sure that he could do so with safety to himself and to others rightfully thereon, and that he so entered the highway in utter disregard of the rights and safety of others using the same, without giving any prior notice, signal or warning of his intention to do so.
Defendant denied Breda's negligence or that he was in any way responsible for the accident or that he created any emergency, and alleged that plaintiff's negligence was the proximate cause of the accident by his failure to keep a proper lookout or to keep his car under proper control and in driving at an excessive rate of speed with improper brakes and on the wrong side of the highway, with a trailer attached to his car, and that, in the alternative, should it be held Breda was negligent, plaintiff was contributorily negligent.
The American Fidelity Fire Insurance Company intervened and claimed the sum of $756.93 paid by it to plaintiff covering the damages to plaintiff's car, less $50 deductible under the provisions of a policy issued by it covering plaintiff's automobile.
Trial was had by jury and its verdict was in favor of defendant, and from the judgment rendered and signed pursuant thereto, plaintiff appealed.
The collision occurred on U. S. Highway No. 84 between Clarence and Winnfield, Louisiana, approximately one-half mile west of the Natchitoches and Winn Parish line about 11:30 A. M., January 4, 1954. The highway at the scene of the accident runs in a general east and west course, and for approximately three miles to the west and a quarter of a mile to the east is straight and level. This is an 18foot concrete paved highway, divided into two traffic lanes by a black center line, with the usual dirt shoulders about 8 feet wide on each side.
On the day of the accident, the highway and shoulders were dry, the weather was clear and visibility was good. On the south side of the highway near the point of impact is a regular type mail box atop a wooden post located approximately 7 feet from the edge of the concrete slab, or at such a distance as would permit an automobile to drive between the slab and the mail box. On the occasion involved, the mail carrier, proceeding eastward in the same direction in which plaintiff was traveling, left the concrete slab and drove to the shoulder and stopped at the mail box. While he was so parked and after he had apparently delivered his mail and before re-entering the highway, plaintiff approached from the rear or the west, traveling between 55 and 60 miles per hour. Plaintiff had hitched to his car a light two-wheel trailer, having a width about that of the car and a length of some 6 to 7 feet. He was returning the *63 trailer empty to Monroe from where he had that day conveyed part of his possessions to Natchitoches. As he approached the Breda car from the rear and when about 250 to 300 feet therefrom, plaintiff blew his horn and let up on the accelerator of his car, at which time Breda started up his car, drove a few feet and stopped, leading plaintiff to believe that he acknowledged plaintiff's right of way and that he was going to remain in that position until plaintiff passed. At that moment, however, the gravel truck, loaded with "E" stone, was approaching from the east or in front of Breda and was traveling in a westerly direction towards Clarence at a speed of 45 miles per hour. Notwithstanding the blowing of plaintiff's horn and Breda's stopping before driving upon the concrete slab, when plaintiff neared the Breda car, Breda suddenly, without looking or giving any signal or warning, drove onto the highway and into the lane traveled by plaintiff. Whereupon plaintiff applied his brakes in an effort to prevent a collision with the Breda car, causing his car to turn and swerve to the left and the trailer to jack-knife, throwing his car into the path of the truck. The impact of the collision knocked the two front wheels off the truck, doing considerable damage to both truck and car, and throwing plaintiff some distance through the right door onto the concrete highway. The Breda car, undamaged, continued on its way.
Plaintiff's action against Breda's insurer is based on the negligence of Breda in driving onto a main traveled concrete highway directly in front of plaintiff, who had the right of way thereon, and without the said Breda looking or keeping a proper lookout for approaching traffic but in utter disregard of the right and safety of others using the highway and particularly the plaintiff on that occasion, and in creating the emergency with which plaintiff was confronted, proximately causing the injuries and damages sustained. Plaintiff's car was practically a total loss. There were only two eye witnesses to the accident, possibly a third if Breda had been looking; however, about a month after the accident, Breda died of natural causes. The two witnesses were plaintiff and the driver of the gravel truck. In describing how the accident occurred, plaintiff testified:
"Along about a city block or maybe two hundred fifty feet from the mail box, where the postman was parked, I blew my horn at him to notify him that I was going to pass him. And he pulled up two or three feet from the mail box and stopped, which let me believe he was going to let me pass, and I got about fifty or sixty feet from him and he pulled his car out on the road as if he was going to outrun me, and more or less beat me out there, and go on before I could get to him. I applied my brakes, and the trailer jackknifed and threw me across the black line into the gravel truck".
Ray Tilley, the truck driver, explained the occurrence in this manner:
"Well, sir, I was going towards Clarence with my load of "E" stone, and I saw a mail carrier on my left side of the road, and his right. About fifteen feet from the mail carrier, I say thirty-five or fifty feet from the mail carrier, the mail carrier pulled out. Mr. Gay was about thirty-five or fifty feet from the mail carrier when he pulled out. And then I applied my brakes and by the time I went to apply my brakes, well, Mr. Gay was up to the mail carrier.
"* * *it did look like he was trying to beat him to the highway."
In answer to additional questions, the truck driver stated that Breda drove from the shoulder into the traffic lane of the highway on which Gay was traveling and approaching.
The evidence of these two witnesses establishes, if they are to be believed, that defendant's assured suddenly, without looking *64 or giving any signal or warning, pulled from the shoulder of the road onto the concrete slab almost immediately in the path of and only a short distance in front of plaintiff's rapidly approaching car and trailer. Defendant produced no evidence to the contrary. We know of no sufficient reasons and none have been pointed out to us justifying us in discarding and disregarding the testimony of these witnesses as unworthy of belief.
Breda's aforesaid negligence constitutes the proximate cause of the accident, whose acts come within the generally accepted definition of proximate cause, as stated in 65 C.J.S., Negligence, § 103, p. 645:
"A comprehensive definition, and one which is, perhaps, most often stated, is that proximate cause is any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred, and from which it ought to have been foreseen or reasonably anticipated by a person of ordinary prudence in the exercise of ordinary care that the injury complained of, or some similar injury, would result therefrom as a natural and probable consequence."
Breda clearly violated the statutory rules and regulations pertaining to entering upon a public highway in his failure to allow the right of way to vehicles approaching thereon. LSA-R.S. 32:237, and by his failure to keep a proper lookout.
In Miles v. Metzger Dairies, La.App., 159 So. 129, it was held that a truck driver who pulled out from the curb without looking to the rear and was struck by a motorist coming from the rear, with the result that the truck was deflected against another motorist standing beside a parked car, was negligent, and that such negligence was a proximate cause of the accident so as to render truck driver's employer liable for motorist's injuries.
Considering that cars, if properly parked at the curb, are compelled in starting up to make a partial left turn, much the same as Breda was required to do in the manner in which he was parked, the necessity for looking to the rear is obvious, and the rules applicable to turning are in point and important. LSA-R.S. 32:235 provides:
"The driver of any vehicle on the highways of this state shall ascertain, before turning around upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction, which will be unduly delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear."
In the case of Terrell v. Fargason, La. App., 67 So.2d 771, 773-774, wherein the defendant was charged with numerous acts of negligence, a statement of the Court of Appeal for the First Circuit is in point and applicable to the facts established here. The court said:
"It has been almost uniformly held by our three Courts of Appeal that one should not make a left turn across a highway unless that turn can be made without danger to normal overtaking and oncoming traffic and with a reasonable degree of safety. Some courts have held that the making of a left turn by a motorist is one of the most dangerous maneuvers. See Michelli v. Rheem Mfg. Co., La.App., 34 So.2d 264."
Plaintiff was suddenly confronted with a real emergency, created by Breda in suddenly driving upon the highway immediately in front of him. Under the circumstances, it could not be said that plaintiff acted in any way other than in a careful, prudent and reasonable manner after being confronted with this emergency. 60 C.J.S., Motor Vehicles, § 257, pp. 624-627, states the general rule:
"Where the operator of a motor vehicle is by a sudden emergency, not *65 caused in whole or in part by him, placed in a position of imminent peril to himself or to another, without sufficient time in which to determine with certainty the best course to pursue, he is not held to the same coolness, accuracy of judgment, or degree of care as is required of him under ordinary circumstances, or of one having ample opportunity for the full exercise of judgment, and is not liable for injuries caused by his vehicle if an accident occurs, provided he exercises ordinary or reasonable care or prudence, considering the stress of the circumstances, to avoid an accident, and, according to the decisions on the question, acts in a way not obviously faulty or which cannot reasonably be found improper or imprudent, and even though a course of action other than that which he pursues might have been better, safer, or more judicious. He is not necessarily negligent because he makes a mistake or error of judgment, or pursues a course which deliberate judgment or mature reflection might prove to be wrong, or omits some precautions, or makes a bad or unwise choice or maneuver, or merely because he fails to adopt the best or most effective means, or the wisest or safest course, for averting injury, unless the choice involves hazards which no ordinarily prudent person would have incurred under similar circumstances; and he is not required to exercise the highest degree of care or skill. There is no absolute duty requiring a driver confronted with a sudden emergency to stop immediately, if some other course appears safer."
A review of the facts and of the applicable law leads us to the conclusion that Breda's negligence was the sole and proximate cause of the accident and that his insurer should respond for the injuries and damages sustained. The several defenses urged by the defendant are either inapplicable or not established by the evidence.
Plaintiff sustained a lumbosacral strain, a broken right hand, cuts, bruises and lacerations on the back and side of his head and on his face and occipital neuritis and injuries to his knees. Dr. James V. Kaufman, to whom plaintiff was first carried, says the plaintiff had two lacerations of the scalp, multiple abrasions and contusions, complained of pain in the back, and with a history of concussion. He noted particularly the abrasions on both knees and on his shoulder and on his face below the lacerations along the left side of his head. His wounds were cleansed and the lacerations were sutured. He was released the night of the same day. Plaintiff returned in about a week for the removal of the stitches.
Dr. Donald F. Overdyke examined plaintiff February 19, 1954, and he says that on that occasion plaintiff had some tenderness to pressure in the lumbosacral region of the back and discomfort. The conditions found by him were such in his opinion as to corroborate plaintiff's contention of pain in his back, knee and hand. Dr. Overdyke estimated, from a later examination of May 8, 1954, that plaintiff would probably be recovered in six to eight months. Plaintiff's back was supported by brace for several weeks.
The findings of Dr. Heinz K. Faludi were approximately the same as those of Dr. Overdyke. Additionally, he found plaintiff suffered with occipital neuritis or neuralgia, with considerable tenderness over the occipital nerve, which originates from the second cervical vertebra and takes a course towards the head, fans out over that area and ends up near the vertex of the head. This condition is very painful, difficult to treat, and if it persists over a long period of time, plaintiff may become disabled and surgery would have to be resorted to. The Doctor said the pain suffered from such condition was quite severe and if it continued to persist a person would become upset emotionally and become rather unstable and nervous.
For the defendant, Dr. Gene D. Caldwell testified that on an examination made *66 February 22, 1954, plaintiff had suffered an acute lumbosacral strain, which had about recovered, and that in his estimation, with the use of the brace, from six to eight weeks would be required to complete his recovery and that normally it would require from six weeks to four months, depending upon the severity of the sprain and the type of treatment he had been provided. His opinion was the same as that of the others, that a lumbosacral sprain would produce pain.
By stipulation, it was admitted that $806.93 represented the cost of the repairs and the amount of physical damage to plaintiff's automobile and that the intervenor should be paid that amount, less $50 deductible, in accordance with the terms of its policy, and, therefore, that the intervenor, if plaintiff recovered judgment, should likewise have judgment in its favor for the amount so paid by it.
In addition to the damages to the automobile, plaintiff is entitled to recover the expenses and charges for medical treatment, as well as for the personal injuries sustained and pain suffered. These expenses appearing from the record aggregate $246.90. For the personal injuries we conclude that an award of $1,750 would be neither excessive nor inadequate.
For the reasons herein assigned, the judgment appealed from is annulled, reversed and set aside, and it is now ordered, adjudged and decreed there be judgment in favor of the plaintiff, Walter B. Gay, against the defendant, United States Fidelity and Guaranty Company, for $2,046.90, with five percent per annum interest thereon from judicial demand until paid, and for all costs.
It is further ordered, adjudged and decreed there be judgment herein in favor of the intervenor, American Fidelity Fire Insurance Company, against the defendant, United States Fidelity and Guaranty Company, for the full sum of $756.93, with legal interest from judicial demand until paid and costs of its intervention.
Judgment reversed and rendered.