Mrs. Virginia Ann Richerson HALL, Individually, and as natural tutrix of and for the use and benefit of the minors, Clifford Kipper Hall and Virginia Dele Hall, and The Travelers Insurance Company, Intervenor, Appellants,

v.

CONTINENTAL DRILLING COMPANY and The California Company, Appellees.

No. 16600.

United States Court of Appeals Fifth Circuit.

June 29, 1957.

Edward Donald Moseley, Fred G. Benton, Clint L. Pierson, John L. Avant, Baton Rouge, La., for appellant Virginia Ann Richerson Hall.

Robert J. Vandaworker, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for appellant Travelers Ins. Co.

Wm. E. Wright, Benjamin W. Yancey, New Orleans, La., Calvin E. Hardin, Jr., Baton Rouge, La., W. Ford Reese, New Orleans, La., Terriberry, Young, Rault & Carroll, New Orleans, La., Durrett, Hardin & Hunter, Baton Rouge, La., of counsel, for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

Plaintiff-appellant's decedent was an employee of the Lane-Wells Company who on the date of the accident was working as a perforator operator on an oil well owned and operated by appellee. The California Company, pursuant to a contract for such services between Lane-Wells and California. At that time employees and equipment of appellee Continental Drilling Company were also located at and working on the same rig pursuant to a separate contract between Continental and California whereby the former was to "rework" the well. Early in the morning of February 11, 1954, some of the decedent's equipment at the rig became fouled, and, the mishap threatening to delay all operations at the well, he decided to go ashore to report by phone to his employer. He requested one Heber Dodson, a supervisory employee of California, to take him to the landing. Dodson agreed to do so and for that purpose he took the only available boat, the "Deborah Jean," a diesel operated motor boat leased by Continental, for whose use he had some days earlier received oral permission from a supervisor of Continental because California's own boat was just undergoing repairs. Though Dodson had previously operated both the California and the Continental boats, he had apparently done so in the case of the latter only when a Continental employee was on board.

Dodson and the decedent entered the boat and started off to the landing some three miles away through the canal system of the California Company. Though he had made the journey several times, in the pitch darkness Dodson missed a turn, and the decedent left the cabin to go aft to look for it and perhaps also to clean the windshield which had fogged up in the night air and could not be completely cleaned by means of the windshield wipers. Decedent apparently fell overboard. Dodson heard a cry and noting that the decedent was no longer aboard he turned the boat around and for some twenty minutes searched for him in the canal by means of the boat's spotlight; at that point the electric power supply failed and Dodson had to swim ashore to summon help. Decedent's drowned body was found the next day.

Plaintiff-appellant brought suit in diversity against both the California Company and the Continental Drilling Com-

pany, charging accidental death due to negligence. The Travelers Insurance Company, the workmen's compensation insurance carrier for Lane-Wells, intervened on the side of the plaintiff, claiming subrogation to the extent of the payments it had made to decedent's family.

On the basis of an affidavit by an officer of California, discussed in greater detail below, the district court granted summary judgment to the company on the ground that plaintiff's exclusive remedy was under the Louisiana Workmen's Compensation Act, LSA–R.S. 23:1021 et seq. The case against Continental went to trial before a jury, but at the conclusion of the plaintiff's case the court granted a directed verdict for defendant on the ground that no culpable negligence by or attributable to Continental, and proximately causing the accidental death, had been shown. This appeal by the plaintiff and the intervenor below challenges both the summary judgment in favor of California and the directed verdict in favor of Continental.

■■ It is not disputed that under the provisions of LSA–R.S. 23:1032 the rights and remedies under the state Workmen's Compensation Act are made exclusive wherever they are applicable, precluding all other suits against an employer by an employee or his dependents; this rule also applies to death actions. Philips v. Guy Drilling Co., 143 La. 951, 79 So. 549; Thaxton v. Louisiana Ry. & Nav. Co., 153 La. 292, 95 So. 773. Thus the controlling question with respect to the summary judgment is whether or not plaintiff had a remedy against the California Company under the Act, the here pertinent portion of which reads as follows:

"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation * * * and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this act which he would have been liable to pay if the employee had been immediately employed by him; * * *." Section 6 of Act 20 of 1914 as amended, LSA–R.S. 23:1061.

Both parties agree that the interpretation of this provision and the determination of coverage are entirely questions of Louisiana law. Isthmian S. S. Co. of Delaware v. Olivieri, 5 Cir., 202 F.2d 492, 494; Fontenot v. Stanolind Oil & Gas Co., D.C.W.D.La., 144 F.Supp. 818, 824, affirmed 5 Cir., 243 F.2d 574.

■ Many Louisiana cases have interpreted the phrase: "work, which is a part of [the principal's] trade, business, or occupation" which defines the type of activity so intimately connected with a person's business that even if assigned to be done by an independent contractor the person remains liable under the compensation Act to the workmen who actually perform the work. A leading case is Turner v. Oliphant Oil Corp., La.App., 200 So. 513, in which it was held that since all oil producing companies had to make an effort to recover the casings from abandoned wells, this being an important element of their costs, such recovery operation was part of the "trade, business and occupation of the oil companies," even if as a matter of fact all companies made a practice of subcontracting this work to specialists. See also the very similar and here persuasive decision in Thibodaux v. Sun Oil Co., La.App., 40 So.2d 761, affirmed Baker v. Sun Oil Co., 218 La. 453, 49 So.2d 852. Appellants rely on the dicta of the Louisiana Court of Appeals in Dandridge v. Fidelity & Casualty Co. of N. Y., La. App., 192 So. 887, 889, a case anteceding the Louisiana Supreme Court decision in the Thibodaux case above, which would exclude "such special work as is not generally done directly by others engaged in the same line of business as is the principal,—such as special construction or even such unusual repairs as are ordinar-

ily made by specialists not customarily within the direct employ of the principal" from the coverage of the statute; but insofar as this exception has not been almost entirely eroded by later decisions it does not appear applicable here in view of the uncontradicted assertions of the affidavit. This court has summarized the law of these and of other Louisiana cases by pointing out that:

" * * * the compensation statute is to be liberally construed so as to include all services that can reasonably be said to be within the statute not only when the injured person seeks its protection, but when he attempts to have himself excluded from the coverage of the act." Isthmian S. S. Co. of Delaware v. Olivieri, supra, 202 F.2d at page 494.

See also Burris v. J. Ray McDermott & Co., D.C.W.D.La., 116 F.Supp. 907, and the discussion of the district court in the recent case of Fontenot v. Stanolind Oil and Gas Co., supra.

The affidavit submitted by California states in pertinent parts as follows:

"The California Company employs other contractors in conjunction with its production of oil and among them are independent contractors who are engaged in the business of perforating the various wells owned by the California Company which independent contractors, in turn, have in their employ perforator operators.

\* \* \* \* \* \*

"The work done by the perforating companies is a necessary part of the trade, business and occupation of all oil producing companies.

"The services performed by the perforating companies is as much part of the business of an oil company as the salvaging of casing and the production of oil itself."

No counter-affidavit was filed by appellants nor were the above assertions contradicted in any manner in the record. It is neither necessary nor permissible to seek support for the summary judgment in the record of the later trial involving Continental, as appellee California would have us do, but we note that even in their briefs appellants outline no factual challenge against the affidavit. Potentially the only factual issue relevant to the summary judgment is whether or not the operation of perforating wells is outside of the usual business of an oil producing company, regardless of whether such work is customarily performed by permanent employees or through hired experts, and on this point we do not see the ambiguity in the affidavit claimed by appellants which would make a judgment under Fed.Rules Civ.Proc. Rule 56(c), 28 U.S.C.A. improper. Thus the summary judgment in favor of the California Company must stand.

■ In granting its directed verdict in favor of the continental Drilling Company the trial court orally expressed the following grounds: there was no proof of negligence on the part either of Continental or of Dodson, for whose acts Continental was in any case not responsible, for there was no showing that Dodson was incompetent to operate the boat and such a conclusion could not be inferred either from the fact that his employer, California, had habitually supplied him with an operator for their boat, or from the fact that in the darkness he missed one of several turns in the canal; even if the admiralty doctrine of no fault liability in the case of unseaworthiness were applicable here, which the court seriously doubted, there was no evidence of unseaworthiness except as to the failure of the electric power some twenty minutes after decedent had fallen from the boat, which failure could not without some further evidence be considered to be the proximate cause of the drowning; thus there could be no basis for a jury finding of either negligence or of unseaworthiness as the proximate cause of the death.

In their brief appellants assert that they "expected to prove" that Continental's negligence consisted of: (1) allowing Dodson to operate the boat though

they knew or should have known that he was an inexperienced operator, without giving him adequate instructions as to its operation and without familiarizing him with safety procedures and the location of safety equipment; (2) the fact that the boat was unseaworthy in that its decks were slippery, its hand rails, windshield wipers, lighting, and crew inadequate, it was not equipped with guard rails, life rings, or other emergency equipment, and its motor and light were not maintained in proper operating condition. Principal reliance for the claim that the case should have been allowed to go to the jury is placed on Schultz v. Pennsylvania R. R., 350 U.S. 523, 76 S. Ct. 608, 100 L.Ed. 668.

The Schultz case is rather easily distinguishable from the case at hand. There the suit was against decedent's employer who had owed the former a duty of exercising reasonable care to provide a safe place to work; there was some evidence of negligence in that the boats were unlighted, slippery with ice, and undermanned; the only element of liability that the court of appeals had found to be completely wanting was that of proximate cause—and the holding of the Supreme Court was that under the facts of that case the jury could have inferred that, since such an inference was not entirely unreasonable and since the Jones Act requires only that the injury result "in whole or in part" from defendant's negligence (see 46 U.S.C.A. § 688, incorporating the remedy created by 45 U.S.C.A. § 51.).

█ Here the suit is against a party having no privity whatsoever with the decedent, a party whose only duty toward the latter with respect to the maintenance of its boat was not to injure him intentionally or not to create a trap which might injure him; the record discloses no evidence of the alleged contractual provision whereby Continental is said to have promised California to provide transportation for the employees of Lane-Wells. Article 2909 of the LSA–Civil Code provides:

"When the thing lent has defects of such a nature that it may occasion injury to the person who uses it, the lender is answerable for the consequences, if he knew the defects and did not apprise the borrower of them."

Here the record discloses no evidence that Continental knew of any defect in the boat or of any incompetency of Dodson. Cf. Lancaster v. Jordan Auto Co., 5 Cir., 121 F.2d 912, interpreting the above provision of the Louisiana law. Furthermore, Continental as lender was not liable for any negligence of Dodson who was in complete charge of the boat, for it is not asserted or maintainable that a boat is a "dangerous instrumentality." Cf. Davis v. Shaw, La.App., 142 So. 301; Lyle v. Guillot, La.App., 143 So. 511; A. C. Service, Inc. v. Porter, La. App., 73 So.2d 600. Thus Continental owed decedent no special duty.

The record discloses no negligence on the part of either Dodson or Continental. As the trial court pointed out there was no showing that Continental knew that Dodson was not a competent operator of a motor boat—or even that that was actually the case. Though Dodson was granted general permission to use the boat while the California boat was under repair there is nothing to show that that permission was meant to extend specifically to occasions when the operation of the boat was particularly dangerous, as appellants claim that it was at the time of the accident because of the darkness and the slippery dampness; it is undisputed that no representative of Continental was informed at the time that Dodson took out the boat. We also agree with the trial court that there was no evidence from which the jury could have found any negligence in the maintenance or equipment of the boat; the only evidence of any neglect or "unseaworthiness" was the eventual failure of the electric power—a defect which could not proximately have caused the drowning of a good swimmer in a 100 foot wide channel some twenty minutes after he had fallen into the water.

Finally any possible liability in this case is not created by the Jones Act which requires only that the injury be due "in whole or in part" to defendant's negligence, but would stem from LSA–Civil Code, Article 2315. Under Louisiana law proximate cause has been defined in standard common-law terms. See Gay v. United States Fidelity & Guaranty Co., La.App., 76 So.2d 60, 64. No more being known of the circumstances of the accident than has been stated above there is *no* basis on which the jury could have attributed it to any act or omission of Continental. The directed verdict was therefore a proper one.

The decisions of the trial court are hereby affirmed.