LOTTINGER, Judge.
This suit is for personal and property damages sustained as the result of a non-collision type automobile accident. The petitioners are Morris M. Bordelon, Sr. and his wife Ella B. Bordelon. The named defendants are Morris M. Bordelon, Jr., their son, Audubon Insurance Company, New Hampshire Fire Insurance Company, and E. L. Torbert. Audubon Insurance Company was the insurer of Morris M. Borde-lon, Jr.’s automobile, and the policy protected him, under excess coverage, in the event he drove any other vehicle. New Hampshire Fire Insurance Company was the insurer of the automobile belonging to Morris M. Bordelon, Sr., which automobile was involved in the subject accident while being driven by Morris M. Bordelon, Jr.
Suit was filed by Mr. and Mrs. Bordelon Sr. against their son, Morris M. Bordelon, Jr., the two insurance companies, and Mr. Torbert, who was driving the other vehicle. Defendant E. L. Torbert filed an exception of no right or cause of action, which was referred to the merits. All of the defendants filed answer denying the claim. After trial on the merits, the lower court awarded judgment in favor of petitioners and against defendants Morris M. Bordelon, Jr. and the New Hampshire Fire Insurance Company, jointly and severally in an amount which was less than the primary coverage under the policy held by New Hampshire Fire Insurance Company. The lower court also awarded judgment maintaining the exception of no right or cause of action filed by defendant Emmet L. Tor-bert. Defendant, New Hampshire Fire Insurance Company and its insured, took a suspensive appeal to this Court seeking a reversal. Petitioners answered the appeal on the question of quantum. A brief has been filed by Audubon Insurance Company, wherein it maintains that a reversal is in order.
The record discloses that the accident occurred at approximately 8:30 A.M. on Sunday, September 28, 1958 on Louisiana State Highway Number One between Morganza and New Roads, Louisiana, in the Parish of Pointe Coupee. The weather was clear, and Highway Number One is a paved highway, the pavement being 18 feet in width. The site of the accident was at a point approximately 1.4 miles north of Labarre, Louisiana, at which site the highway is straight for some distance. The accident occurred in front of the house of defendant Torbert.
Immediately prior to the accident Morris M. Bordelon, Jr. was driving his father’s car in a southerly direction and in the rear *150 of a pick-up truck was being driven by defendant Torbert. Torbert was alone in his vehicle. The Bordelon vehicle was occupied as follows: Bordelon, Jr. was driving’, Mrs. Bordelon, Jr. was seated in the center of the front seat, Bordelon, Sr. was sitting on the right of the front seat, Mrs. Borde-lon, Sr. was seated on the left-hand side of the rear seat, and a Mrs. Amet LaBorde was seated on the right-hand side of the rear seat. There was also a child, or children, of Bordelon, Jr. on the rear seat.
Immediately prior to the accident Mr. Torbert, who was driving the lead vehicle, was nearing the driveway to his home and he was required to make a left-hand turn in order to get into his driveway. As he neared the vicinity of the point at which his turn would be required, the Bordelon vehicle was at a distance of some 300 feet to his rear, and was proceeding at a speed some 60 to 70 miles per hour. Although the record contains many conflicting variations, as is usual in a proceeding of this nature, it appears that the preponderance of the evidence is to the effect that Mr. Torbert put out his hand when the Bordelon vehicle was at a distance of some 300 feet to his rear. Mr. Bordelon, Jr. testified accordingly, and stated that the signal made by Mr. Torbert was a left-hand turn signal. Upon seeing the left-hand turn signal, which he later testified that he “read” as a left-hand turn signal, Mr. Bordelon continued his travel, blew his horn to signal his intention to pass the truck operated by Torbert, and, when he was “two to possibly four car lengths behind” the Torbert vehicle, and in the process of passing it, the truck commenced a left-hand turn. Borde-lon, Jr. testified that the truck came no more than two feet to the left of the center line of the highway. His testimony was to the effect that, upon seeing the signal of the preceding driver, he assumed that the said driver was slowing down to stop, and would let him pass. This testimony of Mr. Borde-lon, Jr. was contrary to statements which he gave the adjusters, of the two defendant insurance companies just a few days after the accident. According to the said statements, which are substantially the same, Mr. Bordelon, Jr. stated that he was traveling in the right-hand lane of traffic at a speed of between 60 to 65 miles per hour, and had. turned into his left-hand lane of traffic in the process of passing the truck. He stated that he then sounded his horn, and the driver of the truck made a left turn signal when he was two to three car lengths behind him, and the truck then made a left-hand turn in front of him.
The record discloses that some ten minutes before trial on the merits, Mr. Borde-lon, Jr. advised his insurance company, as-well as his father’s insurance company, through their respective attorneys, that the statements which he had given their adjusters were incorrect, and that his testimony on trial would not correspond with those statements. In view of this the lower court held that he was an adverse witness- and allowed him to be examined accordingly. Upon completion of the trial both' insurance companies filed exceptions of no-right or cause of action based upon the' premises that their assured had failed to' co-operate in the defense of the suit, and that therefore, under the terms of the policies, the insurance companies would be relieved of liability.
Mr. Bordelon, Sr., who was a guest passenger in his own vehicle which was driven-by his son, testified that he was not particularly paying attention to what was going on in front of his vehicle until he heard the ladies on the back seat screaming. He then looked up, saw his car leaving the pavement on the left side, and the pick-up-truck was almost “square across”, about “halfway,” on the left lane. Mrs. Borde-lon, Sr., who was seated on the left rear, testified that the first thing she knew, her-car swerved to the left, and she did remember seeing the truck which was “real' close” to the car. On cross-examination' she testified that her son blew the horn andl *151 "I didn’t see the truck driver make any kind of signal until after Morris, Jr. had blown the horn. Then the truck driver just put out his hand and turned about the same time.”
Mrs. Bordelon, Jr., seated on the right front, testified that she saw the truck in the front, and the driver signaled for a turn when her husband was in the passing lane. She testified that the truck turned directly in front of the Bordelon automobile. She testified that the “truck was just a couple of car lengths from the car when she first realized that something was wrong.”
Mrs. LaBorde, the other passenger in the Bordelon car knew nothing about the accident except that they ran into the ditch and that Mrs. Bordelon, Sr. was injured.
Mr. Emmet L. Torbert, who was driving the truck testified that he put out his hand to stop before turning into the driveway. He stated that it was his intention to come to a stop so as to allow the following vehicle to pass before he made his left-hand turn. Upon cross-examination he later testified that he was moving slowly to the left when the Bordelon car passed him. His testimony was to the effect that he gave a stop signal when the Bordelon car was about three hundred feet to the rear.
The other two witnesses on the trial of the matter were Mrs. Torbert, and her ■daughter, who were both standing on the front porch of the Torbert home. They both testified that they saw Mr. Torbert give a stop signal and that he did not turn to the left until afer the Bordelon vehicle had run into the ditch.
The accident with which we are concerned did not involve a collision between the two vehicles. The damage was caused when Bordelon, Jr. swerved to the left, to avoid what he thought to be an impending collision, and ran into the ditch, where he evidently hit one or more large bumps which caused the occupants to be bounced around the car rather roughly. After running into the ditch the Bordelon vehicle regained the highway and finally came to a stop on the highway some distance further on.
The attorneys for the defendants argued very strongly to the effect that they had been prejudiced by the late decision of young Bordelon to change his story relative to the accident. Considering all the testimony as well as the other evidence introduced, it appears that even the latter story given by young Bordelon has not prejudiced the case for the defendants because it certainly appears to us that he is still free of negligence.
Taking the evidence as a whole, it appears to us that the Bordelon vehicle was following the Torbert truck at a distance of some few hundred feet, and at a speed in excess of the 60 mile per hour maximum rate as set by law. Be that as it may, upon closing the distance between the two vehicles to that of approximately three hundred feet, Mr. Bordelon, Jr. noticed a signal by the driver of the truck which he interpreted as being a left-hand turn signal. In spite of this signal, Bordelon, Jr. presumed that the driver of the truck would come .to a stop and allow him to pass before executing the left turn. Relying upon his said presumption, he continued along, gave a horn signal indicating his intention to pass the truck, and turned into his left lane in preparation for the maneuver. When he was some two to four cars distance behind the truck, the preponderance of the testimony indicates that the truck commenced to turn toward the left. Considering the short distance between the two vehicles, Bordelon, Jr. was faced with a sudden emergency and cut further to his left to avoid what seemed to him to be an impending crash. In so doing, he possibly cut too far to the left, in any event he took to the ditch, which caused the occupants in his back seat to be bounced around rather violently, thus causing the alleged injuries to his mother.
*152 LSA-Revised Statutes Title 32, Section 23S, Subsection A, provides as follows:
“The driver of any vehicle on the highways of this state shall ascertain, before turning around upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.”
In interpreting the above statute the Courts have held that making of a left turn by a motorist across a highway is one of the most dangerous of maneuvers. Terrell v. Fargason, La.App., 67 So.2d 771. Furthermore in Washington Fire & Marine Insurance Company v. Firemen’s Insurance Company, 232 La. 379, 94 So.2d 295, 296 the Supreme Court of this State stated as follows:
“ ‘The cases are legion which hold that before making a left turn the driver of an automobile must ascertain that he may do so safely; not only is this cardinal rule of the road founded on common sense, but in our State is a positive enactment, incorporated in the Revised Statutes as R.S. 32:235, by the terms of which it is the mandatory duty of the driver of any vehicle on the highways of this State to ascertain, before turning upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed ; and said driver “shall yield the right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.” ’ ”
It therefore seems to us that young Bordelon was justified in assuming that the driver of the truck would come to a stop and allow him to pass before commencing his turn to the left. Although, according to the testimony, young Bordelon was exceeding the legal rate of speed, his negligence in so doing was not the proximate cause. The sole proximate cause of the accident was the negligence of the driver of the truck in commencing his left turn while the car was in the process of passing him, and was only a few feet to the rear of him. Bordelon, Jr. was faced with a sudden emergency, and he immediately turned to the left to avoid the impending crash. It may be that he did turn further to the-left than was necessary, however, considering the emergency facing him, he was not negligent for so doing, and cannot be held liable therefor.
The only substantial difference between the statements given to the insurance adjusters by Bordelon, Jr., and his testimony upon trial, was as to the distance he was behind the truck when the hand signal was given, and as to whether the hand signal was given before the horn signal. Even considering the fact that the horn was blown after the hand signal was given, the law and jurisprudence of this State is to the effect that the driver of a vehicle shall yield the right-of-way to approaching traffic before attempting to execute a left turn. The way was not clear, and the driver of the truck should have afforded the right-of-way to the driver of the following vehicle. We feel that the lower court erred in failing to hold accordingly.
.Considering our conclusions, as herein-above stated, the question of whether the rights of the insurance companies were prejudiced by the change in testimony of Bordelon, Jr. becomes moot. Furthermore, the record discloses that the petitioners did not appeal from the judgment below which maintained the exceptions filed by defendant Torbert, and which dismissed the suit as against Torbert. We are therefore unable to grant any relief against defendant Torbert.
For the reasons hereinabove assigned the judgment of the lower court will be reversed, all costs of this appeal to be paid by petitioners.
Judgment reversed.